LAURA L. OLNEY, Admx.

*v.*

FERDINAND C. HOWE.

1. CONTRACT—*executory, does not pass title to property.* A contract or writing between two parties, mother and daughter, whereby the daughter agrees to furnish the mother a home in her family and a good, comfortable support during the term of her natural life, and the mother, in consideration thereof, sells, assigns and transfers to the daughter all her personal effects and $1300, and the notes or other securities held therefor, possession of the same to be given immediately upon the decease of the mother, the mother to have the full use of the interest of the $1300 during her lifetime, and the daughter, after the mother's death, to pay to a brother $300, where there is no assignment of the note for the $1300, will not take effect as a completed gift of the note *inter vivos*, or as an executed contract to work the transfer of title to the daughter, nor to create a trust in the mother for the use of the daughter.

2. SAME—*requisites to a valid contract—mutuality.* To make a valid executory contract there must at least be two parties capable of contracting, and both must be bound thereby. The promise of each party must be concurrent, and obligatory on both at the same time, to render the promise of either binding. This is as essential as a consideration.

3. SAME—*of wife to support another in her family.* A wife, while living with her husband, who supports his family, either at common law or under the acts of 1861 and 1869, relating to married women, has no legal capacity to make a

valid and binding contract to furnish her mother a home in her family, and a good and comfortable support during her natural life. Such a contract does not relate to her separate property, and the subject matter of it is neither the manual labor of the wife from which she can derive earnings, nor does it have reference to any separate business or trade in which she is proprietress, and out of which earnings can accrue to her.

Appeal from the Circuit Court of Livingston county; the Hon. N. J. Pillsbury, Judge, presiding.

On the 7th day of August, 1873, one Sophia L. Bogart died, leaving three surviving children and only heirs at law, to-wit: Laura L. Olney (wife of Ransom Olney), Ferdinand C. Howe, and Alfred S. Howe. She died at the residence of her daughter, Laura L. Olney, at Pontiac, Illinois. On the 21st day of October, 1873, said Laura caused a petition to be filed in the probate court of Livingston county for letters of administration upon the estate of her mother, setting forth in such petition that said Sophia L. Bogart died intestate August 7th, 1873, "leaving personal property consisting chiefly of household goods and one note for the sum of $1300, all of said personal estate being estimated to be worth about $1400; that said deceased left surviving her Laura L. Olney, Ferdinand Howe and Alfred Howe, her children."

Letters of administration were issued upon this petition to Mrs. Laura L. Olney, and her bond as such administratrix was filed on the same day. The note of $1300 was in the hands of Moses Stevens, of Beaver Dam, Wis., and it, or the money due thereon, was obtained from him by Mrs. Olney, as administratrix of her mother's estate. A citation having issued from the county court of Livingston county, to said administratrix, to show cause why she should not file an inventory, she filed a statement claiming said note and other property, by virtue of the instrument in writing hereinafter set forth, as her own individual property, and also, therewith, an inventory of "all the property in which said Sophia Bogart had any interest at or prior to her decease," at the same time insisting that the same were not assets belonging to said estate.

Said administratrix also filed substantially the same statement as her final report, setting up that there were no assets, and petitioning for a final discharge.

The said Ferdinand C. Howe filed his objections in writing to said final report, but the county court overruled said objections and approved of the final report, from which order Howe appealed to the circuit court.

Upon trial in the latter court the order of the county court was set aside, and the administratrix was ordered to report to the next term of the county court the sum of $1300, in her hands as administratrix, belonging to said estate, for distribution pursuant to the statute. Mrs. Olney appealed from this order and judgment of the circuit court to this court.

The claim of the appellant to the property in controversy is based upon the following instrument :

" This indenture, made this 7th day of April, 1873, between Sophia Bogart, of Pontiac, Illinois, of the first part, and Laura L. Olney, of the same place, of the second part, witnesseth : that the party of the second part, for and in consideration of the covenants and agreements, sale and assignments hereinafter made by the party of the first part, does hereby covenant and agree to and with the said party of the first part that she will furnish her a home in her family, and a good and comfortable support, during the term of her natural life. The party of the first part, for and in consideration of the covenants and agreements hereinbefore made by the party of the second part, does hereby sell, assign and transfer to said party of the second part all her property and effects, consisting of household goods, and $1300, and the notes or other securities held therefor, possession of the same to be given to and taken by the party of the second part immediately upon the decease of the party of the first part. It is further mutually agreed by and between the parties, that the party of the first part is to have the full use of the interest of said $1300 during her lifetime, and that the party of the second part shall, at and after the decease of the party of the first part, pay to Alfred

S. Howe, a son of the last named party, $300; and that the covenants, agreements and assignments herein contained shall be binding upon the heirs, executors, administrators and assigns of the respective parties.

"In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

"SOPHIA G. BOGART, [*Seal.*]

"LAURA L. OLNEY.   [*Seal.*]"

The other facts, and the objections urged to the report of the administratrix, sufficiently appear in the opinion of the court.

Mr. A. E. HARDING, for the appellant.

Mr. S. S. LAWRENCE, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The instrument on which appellant's claim is based did not take effect as a completed gift *inter vivos*, or as an executed contract, to work the transfer of title to appellant. There was no assignment or delivery of the note for $1300. The instrument was clearly executory in its character. By its terms possession of the property was to be given to and taken by appellant upon the decease of Mrs. Bogart, who was to have the full use of the interest on the $1300 during her lifetime, and after her death appellant was to pay Alfred S. Howe $300 of the money secured by the note. There is in the instrument no declaration of trust, and it does not appear therefrom that it was the intention of Mrs. Bogart to assume the position of trustee, and thereafter hold the note and other property in trust, for the benefit of appellant, as *cestui que trust*. The writing is essentially testamentary in its nature, and, omitting for the present the element of contract, its object was to make disposition of property after the death of the owner. It did not, after such death, take effect as a testamentary devise, for it was not executed and witnessed as required by the Statute of Wills.

The question then arises, was the instrument, at the time it was made, a valid and binding executory contract between the parties?

To make it a valid executory contract both parties must have been bound thereby. The promises of each party must have been concurrent, and obligatory on both at the same time, to render the promise of either binding. 1 Chit. 297; *Tucker* v. *Wood*, 12 Johns. 190. This court said, in *McKinley* v. *Watkins*, 13 Ill. 142, "unless the plaintiff were bound, on his part, not to do the act which formed the consideration of the promise of the defendant, the agreement was void for want of mutuality;" and said, in *Nelson* v. *Hayner*, 66 Ill. 490, "it is indispensable to every legal contract that there be two contracting parties competent to contract." It is admitted that, at the date of the execution of the instrument, Laura L. Olney was a married woman, living with her husband. Being such, did said instrument become obligatory on her, and was she bound, as provided therein, to furnish Mrs. Bogart a home in her family and a good and comfortable support during the term of her natural life?

At common law a married woman had no power to bind herself by contract. She might, it is true, have made a charge upon her separate estate in equity, but that was regarded not as an obligatory personal contract, but as an appointment out of such estate. The appellant had, then, no legal capacity to bind herself to do that which she agreed to do by this instrument, unless such capacity was conferred either by the Married Woman's act of 1861, or by the statute of 1869. The latter act conferred upon her .the right to receive, use and possess her own earnings, and sue for the same in her own name. In *Haight* v. *Mc Veagh*, 69 Ill. 625, a contract by a married woman (who was earning money by keeping a retail grocery store) to pay for goods to be used in her enterprise, was held valid, and an action at law against her for the breach thereof was sustained, and this upon the ground that such a contract was within the statute of 1869, giving her the right to sue in her

own name for her earnings. It was stated in that case that the earnings were not to be limited to such, only, as should result from manual labor, and the court said, "the goods were purchased by the appellant to be used in her business as proprietress of a retail grocery store." In *Thompson* v. *Weller*, 85 Ill. 197, this court, in referring to the decision in the former case, said : "The court expressly put it upon the ground that the right to earnings, mentioned in the statute, is not limited to those only arising from manual labor." The contract now before us does not come within the scope of the necessary implication of the statute of 1869. The subject matter of the contract was neither the manual labor of the appellant from which she could derive earnings, nor did it have reference to any separate business or trade in which she was engaged as proprietress, and out of which earnings would accrue to her. If she had, during the lifetime of Mrs. Bogart, refused to furnish the home and support, she could not, by force of this statute, have been compelled to do so, or to respond in damages.

The act of 1861 conferred upon married women the right to hold, own, possess and enjoy, the same as though they were sole and unmarried, their sole and separate property, owned at the time of the marriage, or acquired during coverture in good faith from persons other than their husbands, by descent, devise or otherwise. This act has been held by implication to confer on them power to make contracts necessary for the use and enjoyment of their separate property. *Carpenter* v. *Mitchell*, 50 Ill. 471 ; *Cookson* v. *Toole*, 59 id. 515 ; *Haight* v. *McVeagh*, *supra*. We know, however, of no case, in which the separate property of the wife was not involved, and in which no question of personal earnings arose, wherein it has been decided that a *feme covert* may make a valid and binding contract. We have, of course, no reference to contracts made under statutes enacted subsequent to the date of the contract under consideration. In this case a married woman, living with her husband and under his roof and control, assumed to

make a contract that would bind her to furnish a person with a home in the family, and to support such person for life. Such agreement had no reference to or connection with any separate property owned by the wife, and it appears that she had no such property of any kind, either real or personal.

The question is suggested whether, as the contract of appellant was fully executed, the contract of the deceased may not be sustained as an executory contract upon the ground that it had a valuable consideration. A contract may be defined to be an agreement between two or more parties, upon sufficient consideration, for the doing or not doing of some particular thing. As we have already seen, it is indispensable to every legal contract that there be two contracting parties competent to contract. In the case now before us the element of a consideration may be present, but the equally essential prerequisite of two competent contracting parties is wanting. The latter element is as necessary as the former. The cases referred to by appellant arose under the law of agency, and are cases where the contracts, when made, were void as to the principals for want of authority in the agents to make them, but where, the contracts having been fully performed by the parties of the other part, the principals had received the benefits of such performance, and were held to have ratified the contracts and to be bound to fulfil on their parts. The cases have no application here. In them there were at least two parties competent to bind themselves, while here there was not.

The evidence shows that appellant had no separate property, that her husband furnished the home and support for the deceased and paid all the bills made on her account. If all this was not intended as a gratuity, there was ample remedy therefor, and the claim might have been probated against the estate. Whether it is now barred is a matter not before us. If appellant has any right growing out of the instrument in writing, it must be based on some theory of the case not suggested by the brief and argument filed in her behalf. The comments

made upon the moral character and conduct of appellee are not pertinent to the points of law involved in the controversy. The judgment of the circuit court is affirmed.

*Judgment affirmed.*