LEWIS B. CASNER

*v.*

MARY C. PRESTON.

*Filed at Springfield March 26, 1884.*

1. APPEAL—*review of controverted questions of fact.* On the trial of an appeal from an order of the county court allowing a claim against an estate, the execution of the note sued on was denied under oath, and no consideration and failure of consideration, and a settlement of the claim, were set up in defence. The jury found the issues for the plaintiff, upon which judgment was rendered for the amount of the note, and this judgment was affirmed by the Appellate Court: *Held,* that the findings on the issues by the jury, and the findings by the Appellate Court, were conclusive on this court as to the disputed questions of fact.

2. MARRIED WOMEN—*power to make binding contracts.* Section 6, chapter 68, of the Revised Statutes of 1874, confers ample power on a married woman to enter into a contract with a person other than her husband, to remain with her family on his place, and allow him to make his home in the family, and give him such care and attention as he might require during his life, in consideration of his promise to pay her for the service.

3. In this case, a feeble old bachelor, advanced in years, executed and delivered to a married woman a promissory note for $4000, payable six months after date, to induce her to remain in his house and make it a home for him, and to care for and nurse him during his life, which she agreed to do, and she performed the agreement without objection on the part of her husband. It was *held,* that the note was based on a sufficient consideration, and that had she failed to perform her agreement, or been prevented from doing so, that would have only gone to the consideration, but not to the validity, of the note.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Piatt county; the Hon. J. W. WILKIN, Judge, presiding.

This was a claim filed by the appellee in the county court of Piatt county, at the October term, 1882, against the estate of Christopher Casner, deceased, founded on a note, a copy of which is given in the opinion of the court. The administrator denied the execution of the note, under oath, and pleaded the general issue, and that the note was without consideration. On a trial in the county court the jury found for the claimant, upon which the court rendered judgment. On appeal by the administrator, a trial was had before the court and a jury, resulting as in the county court.

The evidence shows that in the spring of 1876, Christopher Casner, deceased, let the appellee and her husband into the possession of his dwelling house and two hundred acres of land, on condition that her husband, James Preston, should tend such portion of the land as they might agree upon, and that appellee should reside in such house, with her family, consisting of herself, her husband, and four children, and should permit Casner to make said house his home, and that she should at all times thereafter make Casner comfortable therein, by her personal supervision, care and attention, in sickness as well as in health. It was alleged in appellee's bill filed in another case, which was read in evidence in this case, that about March, 1880, she notified Casner that she was going to leave the place; that Casner was a bachelor, in advanced years and failing health, and about that time agreed with her that if she would remain with her family upon the place, and continue to make for him such a home and give him such care as she had before given him, so long as he should live, he would make her a deed for the two hundred acres of land within nine months from that time, and that appellee then agreed to such offer, and complied with her

part of the contract until the death of said Casner, which occurred November 3, 1880. Appellee also introduced in evidence a letter, in the words and figures following:

*"October 18th.*

"I am feeling very poorly to-day, and in case I should not get well to make other arrangements for Mrs. Preston,—that I don't speak to my brother, Lewis, concerning my request in my letter to him,—I give her this to hold and to show, should they try to cause her any trouble. I also give her her choice of taking the property or money. She wished the property in place of the money, but for fear they will cause her trouble, I give her my note for four thousand dollars ($4000) against me or my estate, and she is to be provided for first, before any of the land is divided. This I do for her for her kindness, and the care she has given me through my sickness. I feel it my duty and right to provide a home for her. She deserves to be amply rewarded for the care and nursing she gives me now. No one could do it better, and with more kindness, than she does. I also give her these things because she has promised to wait on me, and do all she can to make me comfortable, through my sickness. She has done so, and will still do all she can in making me comfortable. If my people refuse to give her the property, then they must pay the money. This is to be preserved if I don't get well.

C. CASNER."

The defendant introduced in evidence from the files of the county court the account of James Preston, against the estate, for $1162.42, including a charge for boarding the deceased in 1877, 1878, 1879, and up to November 3, 1880, amounting to $624.

Messrs. NELSON & CAREIUS, and Messrs. LODGE & HUSTON, for the appellant.

Messrs. REED & DAVIDSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee filed in the probate court of Piatt county, at the October term, 1882, a claim for allowance against the estate of Christopher Casner, amounting to $4000, with interest. The claim was evidenced by this instrument:

"BEMENT, ILLINOIS, *October 18, 1880.*

"Six months after date I promise to pay M. C. Preston (4000) four thousand dollars, with six per cent interest from date."

It was signed with the name of deceased. To it was attached this memorandum: "If I fail to deed to her the two hundred acres of land where she now lives, in her own name, as I have agreed to do, where the buildings and improvements are is hers." This memorandum was neither signed nor dated, but was below the note, and on the same paper. The administrator denied, under oath, the execution of the note, and filed a plea that it was without consideration; also, the plea of non-assumpsit, not sworn to,—to which replications were filed. There was a trial in the probate court, by the court and a jury, and the issues were found in favor of appellee. The administrator appealed the case to the circuit court, where, on a trial by the court and a jury, the same verdict and judgment were rendered. He thereupon removed the case, by appeal, to the Appellate Court, where, on a trial, the judgment of the circuit court was affirmed, and he appeals to this court, and urges a reversal.

The jury and the Appellate Court having found that deceased did make the note, and that there was a sufficient consideration, and that the note was not settled, as claimed by evidence admitted under the plea of the general issue, these findings are conclusive on us, the statute having forbidden this court from reviewing such facts.

But it is insisted that appellee, being a married woman, was incapable of entering into such a contract, and the case

of *Olney* v. *Howe*, 89 Ill. 556, is referred to in support of the proposition. In that case the administratrix claimed under a written agreement with her mother, who was a married woman, and it was held that under the Married Woman's law, as amended in 1869, she had no power to execute such a contract as was in controversy in that case. It was there agreed that if the daughter should furnish the mother, who was a *feme covert*, with a home and support for life, the daughter should have certain promissory notes, the mother retaining the notes and to have the interest arising from them during her life. The notes were neither assigned nor delivered to the daughter. But this note and agreement were executed after the adoption of chapter 68 of the Revised Statutes of 1874, the 6th section of which authorizes a married woman to contract and incur liabilities, which may be enforced against her as if she were sole, and unmarried. The only expressed limitation is, that she shall not enter into partnership business without the consent of her husband. This provision of the law confers ample power on married women to enter into such a contract as this, especially so when not objected to by the husband.

It is insisted that a married woman, from the relation of husband and wife, is required to devote her labor, attention and care to her husband and family, and to hold, under even that section, that she may contract to support and devote her care and attention in nursing another person for life, is destructive of marital duties and obligations. Whatever the duty in case the husband objects to such a contract, in this case he, so far as can be learned from this record, made no objection. It is certainly true that no one else can interpose such an objection but the husband. The note was executed and delivered, and required nothing more to perfect its execution and validity. Unlike the case of *Olney* v. *Howe*, there was nothing more to be done to vest the legal title of the note in appellee. There the title, by the terms of the contract,

was not to pass to the daughter till the death of the mother. It was held to be in the nature of a devise; but here the title vested in appellee on the delivery of the note. Nor did it matter in the least that a portion of her part of the contract still had to be performed. If she failed to perform the balance of her agreement, that would have gone to the consideration of the note, but not to its validity. This is the broad distinction between the two cases.

There is no complaint that the court erred in any of its rulings on the law, on the trial. It is true that it is assigned for error that the trial court erred in refusing appellant's instructions; but that assignment of error is not noticed in appellant's argument, and seems to have been abandoned.

The lower courts have found that appellee fully performed her part of the agreement, and deceased must have received the consideration for which he contracted and gave his note. Had appellee failed, refused, or had her husband prevented her from performing her part of the agreement before the death of the maker, then there would have been a failure of consideration to the extent of the unperformed portion of the contract. But that was not the case, as the lower courts have found. We do not hold that the husband did not have the power to compel appellee, at any time, to cease the performance of the agreement, or that she had the power to perform such a contract in despite of her husband's objections. There seems to have been no objections by him in this case, and it must be inferred that his wife entered into and performed the agreement with the consent of the husband.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*