## HENRY W. AVERY, ADM'R, ETC.,

### V.

## ELIZABETH M. MOORE.

*Administration—Claim for Services Rendered Deceased—Evidence— Power of Wife to Contract and to Sue—Acquiescence of Husband.*

1. Where it appeared that, in pursuance of a verbal contract made between claimant and deceased in his lifetime, deceased lived with claimant for a time and was cared for by her, statements made by him, after he was taken from claimant's care, to the effect that he was not well treated, while in her care, were properly excluded.

2. Neither is it proper in such case to show declarations of deceased while living with claimant, not made in her presence or hearing, as to moneys paid by or to deceased, or how the same were used.

3. Self-serving statements of deceased, made in his lifetime in the absence of claimant, which did not accompany an act of deceased competent to be shown in evidence, were no part of the *res gestœ* and not admissible.

4. Offers of deceased's children, while he was living with claimant, to furnish him a home, were immaterial, and evidence to show them was inadmissible.

5. The contract of claimant to care for deceased having been a continuing one, the objection that the claim is stale can not be made.

6. Although the contract was for the care of deceased up to the time of his death, and claimant did not care for him up to his death, this fact does not defeat her right of recovery, the evidence showing that her failure to care for him was not by reason of her default.

7. The evidence in the case presented is sufficient to show that the contract was made with the claimant and not with her and her husband, and no one but the husband can raise objection to a contract of this character being made and enforced by a married woman.

[Opinion filed December 16, 1889.]

Appeal from the Circuit Court of Boone County; the Hon. Charles Kellum, Judge, presiding.

Messrs. J. C. Garver and W. W. Wood, for appellant.

Messrs. W. R. Dodge, R. W. Wright and N. C. Warner, for appellee.

Upton, P. J.  The controversy in this proceeding grows out of a claim for $1,537, filed by Elizabeth M. Moore, appellee, against the estate of George Gilson, deceased, for services, etc., rendered him in his lifetime.

It appears from the record before us that George Gilson, deceased, resided in Boone county, Ill., of which county he was an early settler.  Industrious and thrifty in his habits in early life, he had accumulated property amounting in value at the time of his death to about $8,000, consisting of a block of land in Belvidere, in Boone county, upon which was a house, barn and outbuildings in value about $1,600, with personal estate, mostly notes and mortgages, in value $6,500.  He died October 26, 1886, upward of eighty years of age, leaving sons and daughters surviving him.  He suffered for some years preceding his death with chronic rheumatism, complicated with trouble in his kidneys and bowels, incident to the decay and torpor of extreme old age, to such an extent that at times he was wholly unable to control his person in the calls of nature.

His wife died several years preceding his own demise.  After the death of his wife, and before her marriage, the claimant (appellee, who was his granddaughter,) kept house for him for some years at his homestead in Belvidere.  About 1878 she was married to John A. Moore, and with her husband removed to the State of Kansas to reside.  George Gilson remained alone at his homestead in Belvidere after the claimant's marriage and removal, caring for himself as best he could, aided and assisted from time to time in his necessities through the kindness of his neighbors, until August, 1881, at which time he went to Kansas to the claimant's place of resi-

Avery v. Moore.

dence for the avowed and oft repeated intent and purpose of making some arrangements by which the claimant and her husband would return to the homestead of Gilson in Belvidere, live with and take care of him. It further appears from the repeated statements of Gilson, immediately preceding and quite soon after his return from Kansas above stated, that he had contracted and agreed with the claimant that if she would return to his home in Belvidere with her family, live with and care for him, he would give her his homestead, of the value of $1,600 or $1,800, or otherwise make her suitable and adequate compensation therefor. In fulfillment of which he (Gilson) soon after made his will, executed in due form of law, therein devising to the claimant this homestead property, as agreed.

On the 26th of October, 1886, appellee (claimant) and her family, after breaking up their home in Kansas, returned to the homestead and residence of her grandfather, George Gilson, commenced service under the agreement, and continued that service in a reasonably acceptable manner, as she had undertaken to do, until the 28th day of March, 1886, at which last named time George Gilson, then sick, unable to walk, enfeebled in mind and body, was taken and carried from his home, and from complainant's care, without her request or consent, by the direction or procurement of his children, or some one of them, to the residence of a Mrs. Eliza Leach, a married daughter of George W. Gilson, residing in Belvidere, where he died in October thereafter.

After Gilson was taken from the claimant's custody and care, he was for some reason induced to and did revoke the will before mentioned in which he had devised the homestead to this claimant and executed a deed of conveyance thereof to Mrs. Eliza Leach, and also executed a new will by which he bequeathed to the said Eliza Leach the sum of $1,000 in money, and to her daughter Bessie Leach $500, and the entire residue and remainder of his estate to his children and certain of his grandchildren, making no provision whatever for the claimant, appellee.

In this state of the facts the appellee filed her claim, in the

administration of Gilson's estate, for 1,537 days' services, being
for the time she actually cared for Gilson under the agree-
ment, at one dollar per day, and verified her claim by her
oath.

By agreement, the proceedings so commenced in the County
Court, sitting in probate, were transferred to the Circuit
Court of Boone County, wherein a trial was had before a jury,
and a verdict rendered for the appellee, claimant, for the full
amount of her claim, $1,537. A motion for a new trial was
made and overruled and judgment rendered on the verdict,
from which the administrator prosecutes this appeal.

The jury in the trial court specially found that claimant, by
and in pursuance of an express verbal contract made with
George Gilson in Kansas in August, 1881, lived with and cared
for him pursuant thereto 1,537 days, and that such service and
care was worth $1,537, or one dollar per day, and that during
the time of the performance of such services, the family of
the claimant and herself were mainly supported and provided
with provisions and fuel by her husband, John A. Moore;
that the time of such service began on the 26th day of
October, 1881, and continued until the 23d day of March,
1886, with the exception of ten weeks—being for a period of
four years, two months and seventeen days.

It is insisted by appellant that the trial court excluded com-
petent evidence in the statements claimed to have been made
by deceased, George Gilson, in his lifetime, after he was taken
from appellee, to the effect that he was not well treated while
with appellee and under her care. It was quite proper on the
part of the trial court to reject such offer and the ruling in
that regard was not erroneous. It could not be competent on
the ground of *res gestæ* as is claimed, nor upon any other
principle that occurs to us. Neither was it competent to show
declarations of Gilson while living with the appellee, and not in
her presence or hearing, as to money paid by or to Gilson or
others, or how the same was used. Self-serving statements of
George Gilson in his lifetime, verbal or written, in the absence
of appellee, which did not in fact accompany any act of Gilson
competent to be shown in evidence, were no part of the

*res gestæ.* In order that verbal statements accompanying an act may be competent as a part of the *.res gestæ,* manifestly the act itself must be material to the issue involved; one party can not give his declarations in his own favor in the absence of the other party, as a general rule, one of the exceptions being that when the declarations offered give character to an act proper to be given in evidence and *accompany that act,* they are admissible as the *res gestæ.* Weyrich v. The People, 89 Ill. 96, and cases there cited; Vol. 1 Greenleaf on Evidence, Chap. 5.

It would seem too clear to require discussion, that if the decedent was liable to appellee for her labor and care bestowed upon him, he could not escape liability nor exonerate his estate from payment therefor, by any recital in any paper the decedent or his attorneys might draft, or by any verbal statements made to third persons in the absence of appellee, and which were self-serving in effect, and that, more especially, when made after such service was performed.

Neither was it competent in our judgment to show that his sons and daughters offered George Gilson a home with them, if such was the fact. Gilson was not bound to accept of such offer if made, nor would that fact, if fact it was, preclude decedent from his right to reside in his own homestead, or to employ such persons to care for him as he chose, or in the least degree, in a legal sense, tend to maintain or defeat claimant's right of recovery in this proceeding. It is enough that such sons and daughters did not care for or maintain their father during any period of the time here claimed; what they offered to do was of no consequence. It was his privilege to select his housekeeper and his nurse.

The will and conveyance to Mrs. Leach, we think, were competent evidence and properly admitted by the trial court. It was the best evidence obtainable that the decedent did not keep his contract or agreement, which the jury found he made with the claimant, to show the legal disposition he had made of his estate.

It is further claimed, that during the entire period of time decedent and the claimant resided together, and up to the

death of the decedent, she made no claim, and hence that this is a stale claim. We confess our inability to see the application of the principle involved, to the case at bar. This contract was a continuing one commencing on October 26, 1881, and terminating at the death of George Gilson, when the care for which he had contracted could no longer avail him.

Equally unavailing is the objection that claimant was to take care of him as long as he lived, and that she did not do so for the last seven months of his life, and therefore no recovery can be had. The evidence shows the claimant was in no manner chargeable with this default. There is no pretense of her unwillingness, refusal or inability to perform the contract on her part.

Again, it is said that the alleged contract or agreement was not with the wife alone, but with both husband and wife, if any existed, and therefore no recovery can be had in this proceeding. It was held in Casner v. Preston, 109 Ill. 531, that Sec. 6 of Chap. 68 of the Revised Statutes of 1874, confers ample power on a married woman to enter into a contract with a person other than her husband to remain with her family on his place, and allow him to make his home in the family and give him such care and attention as he might require during his life, in consideration of his promise to pay *her* for the service.

While, in the case at bar, the one party being dead and the other precluded from being a witness, the particulars of the contract or the person with whom it was made, can not be established as fully as might be desired, yet it is manifest that the moving consideration on the part of Gilson was to obtain the personal care, nursing and service of the claimant, who had previously resided in his home as housekeeper and servant; that fact, in connection with the oft repeated declarations of Gilson in his lifetime, both before and after claimant's return from Kansas, that he had made a contract and arrangement with the claimant to return to Illinois, live with and care for him, and for which he was to compensate her by giving to her, at his death, the homestead, or other suitable compensation, as before stated, with the other circum-

Avery v. Moore.

stances, fully warranted the jury in finding the contract to have been made with the claimant, and entitled her to the compensation for such services.

It is certain that no one but the husband can interpose any objection thereto except in so far as the judgment in this proceeding should not bar a further action for that service in the name of and for the benefit of the husband, which is not claimed in this case. So far as is disclosed by this record the husband of the claimant is making no objection to the claimant's asserted right to the compensation sought, and presumptively he acquiesces therein.

It is further claimed that the trial court erred in allowing certain questions to be propounded to and answered by Mrs. Brown and Mrs. Gorham, witnesses recalled by the claimant in rebuttal, as also the evidence called upon the contradiction or impeachment of Mrs. Basket. We have carefully examined the evidence in that regard, and we are unable to perceive any error in the ruling complained of.

It is further claimed that the amount allowed the claimant by the jury was excessive. In our judgment, after a careful consideration of all the facts and circumstances in this case as shown by the record before us, we do not think the judgment below can be regarded as excessive; indeed, in our judgment the evidence would have warranted a larger verdict and judgment had it been claimed.

The instructions of the trial court to the jury were eminently fair on both sides, and, taken together, presented the law fully and fairly to the jury. The refused instructions were properly refused, in our judgment, and finding no substantial error in the case, the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*