SAMUEL C. THOMPSON

*v.*

MARY E. WELLER.

1. STATUTES—*rule of construction.* In the construction of statutes in derogation of the common law, courts can not properly give force to the statute beyond what is expressed by its words, or is necessarily implied from what is expressed.

2. MARRIED WOMAN—*power to contract at common law.* At common law, if a married woman enters into a contract, however valid as respects her separate property, she can not be sued upon it at law, and it does not, in any way, at law or in equity, bind her personally.

3. SAME—*power to contract under statute.* Under the Married Woman's Act of 1861, and the amendatory statute of 1869, a married woman has no legal capacity conferred on her to purchase real estate, and make a contract for the purchase money, on which she can be held personally liable. She can make contracts only so far as is necessary for the use and enjoyment of her property or in respect to her earnings.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. HORATIO M. VANDEVEER, Judge, presiding.

On April 2, 1873, Frederick Wucherpfenning and Mary E. Weller gave their joint promissory note, payable to Wm. D. Corn, at ninety days, for $800. This note was assigned to Samuel C. Thompson, who brought suit against the makers August 13, 1873.

Mary E. Weller pleaded coverture at the date of the note and its continuance until the filing of the plea. Plaintiff, to this plea, filed two separate replications. In the first he alleged, that the note was given in payment for certain lands sold and conveyed by Corn to the makers of the note and one Christopher Wucherpfenning. In the second he alleged, that the consideration of the note was, that Corn *would* convey certain lands to the same parties, and that Corn *had afterwards* so conveyed the same by quitclaim deed.

To each of these replications Mrs. Weller demurred. The circuit court sustained both demurrers, and gave judgment in

favor of Mrs. Weller in bar of the action. Thompson contends that the demurrers should have been overruled, and asks that the judgment of the circuit court be reversed.

Mr. JESSE J. PHILLIPS, and Mr. JAMES M. TRUITT, for the plaintiff in error.

Mr. R. McWILLIAMS, and Messrs. RICE & MILLER, for the defendant in error.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

As early as February, 1818, a general statute was passed by the General Assembly of Illinois, declaring that the common law of England, and certain statutes of the British Parliament, "shall be the rule of decision" in this State "until repealed by *legislative authority.*" (Revised Laws of 1833, p. 425.) That general statute, with a slight modification of its phraseology, has been in force in this State ever since. At an early day, circuit courts of this State were, by statute, clothed with "jurisdiction as courts of chancery," and, while exercising that jurisdiction, were required, unless otherwise provided by statute, to proceed " according to the general usage and practice of courts of equity."

These two general statutes constitute, under our constitutional regulations, the foundation of our system of jurisprudence. Common law, and the general usages of courts of equity, have in this State been modified in many respects by statutes, and this not only by the express enactments of statutes, but also by certain implications arising from and growing out of the express words of the statute. Bishop has said, that " many things not set down in the statutes, flow, nevertheless, from them by *judicial interpretation.*" And he very aptly adds, " *these* are the most difficult of *all things* in the law to be ascertained." This difficulty arises, in some measure, from the fact that courts have not always remembered that it is the business of courts merely to adjudge what the law is, and that it is no part of their duty to make new laws or to add one

tittle to the old law.  That function rests exclusively with the legislature.  Forgetful of this fundamental rule, and in further-ance of what they consider to be public policy or the unexpressed spirit of the written law, courts, sometimes, in the construc-tion of the written law, do not confine themselves to the *neces-sary implications* of the words of the statute, and indulge in what are called *reasonable* implications, hence the uncertainty spoken of by Bishop.  Most men may readily agree as to what things are *necessary* implications arising from a statute, while few could agree as to the boundary of *reasonable* implications flowing therefrom, but lying beyond the bounds of *necessary* implications.  The true rule is that laid down in these general fundamental statutes, which declare that the old, unwritten law " *shall be* the rule of decision until repealed by legislative au-thority."  In the construction of statutes in derogation of the common law, courts can not properly give force to the statute beyond what is expressed by its words, or *necessarily* implied from what is expressed.

Before the Married Woman's Act of 1861, by the unwritten law of Illinois, as adopted by the general statutes already spoken of, a married woman had no general power to bind herself personally by contract.  " If a wife enters into a con-tract, however valid as respects her property, she can not be sued upon it at law, either during or after coverture, and it does not, in any way, *at law or in equity*, bind her person— in other words, though a wife may, by contract, bind her prop-erty, she can not bind her person."  (Bishop on the law of Married Women, and the authorities there cited.)  While she might, by her agreement, create a charge upon her separate estate, such agreement, " properly speaking, is not an obliga-tory contract, for as a *feme covert* she is incapable of contract-ing, but the agreement is rather an appointment out of her separate estate."  (Story's Eq. Jur. sec. 1399.)

By the act of Feb. 21, 1861, the sole and separate property of a married woman, also property owned by her at her mar-riage, and also property acquired by her during coverture from any person other than her husband, and the profits of

any such property, was placed "under her sole control, to be held, owned, possessed and enjoyed by her, the same as though she was sole and unmarried;" and by the act of March 24, 1869, it was provided that "a married woman shall be entitled to receive, use and possess her own earnings, and sue for the same in her own name."

The contract under consideration is to pay $800 for land conveyed or to be conveyed by the payee to Mrs. Weller and two other persons. In the absence of the statutes of 1861 and 1869, it is very clear that no action could be maintained against Mrs. Weller upon such a contract. A married woman—she, at common law, was incapable of binding herself personally by contract. Has the capacity to make this contract been conferred upon her by statute, either expressly or by necessary implication? We think not. Neither of these statutes purports to confer expressly upon a married woman any capacity whatever to contract. It has been held, however, that by necessary implication the statute confers upon her the capacity to bind herself personally by contract, where the contract in question is embraced in the exercise of her right to control and enjoy her own property and its profits.

In *Carpenter* v. *Mitchell*, 50 Ill. 471, this court say of her rights under the act of 1861: "Her power to make contracts so far as may be necessary for the use and enjoyment of her property, must be regarded as resulting by implication from the statute."

In that case, however, this court decided that the implication arising from the statute did not confer upon her the capacity to buy real estate and make a contract for the purchase money, on which she could be held personally liable. The opinion was expressed in that case, that "all remedies against married women upon contracts, even if they relate to their separate property, should be found on the equity side of the court."

The principle on which that case was decided has never been invaded by any subsequent decision, and is clearly sound. The observation at the close of the opinion in that case, that

"all remedies against married women upon contracts, even those relating to their separate property, should be found on the equity side of the court," has been declared mere dicta, and overruled in *Cookson* v. *Toole*, 50 Ill. 521, and it is there laid down, that, so far as relates to her engagements not within the capacity given by implication of the statute, the remedy, where a proper case exists, must be sought in equity, as under the old forms of settlement; but the implication of capacity to contract, arising under the statute, is an implication of law and not of equity, and the capacity to contract *within* the scope of *the implication* is necessarily a legal capacity, and all contracts under such capacity must be legal contracts, cognizable in courts of law.

The question, since that time, has been, in each case, was the contract in question within the scope of the implication of the statute?   In that case (*Cookson* v. *Toole*) it was held, that a contract by a married woman to pay for services rendered, at her request, in the improvement and cultivation of her own farm, and in caring for the stock thereon, the land and stock being her own under the act of 1861, was within the implications of that statute, and she could be sued at law thereon. So, in *Halley* v. *Ball*, 66 Ill. 250, a contract by a married woman to pay for services rendered and materials furnished and money expended for the benefit of her separate property, was held valid and binding on her at law, in a personal action. Again, in *Haight* v. *McVeagh*, 69 Ill. 625, a contract by a married woman (who was earning money by keeping a retail grocery store) to pay for goods to be used in her enterprise, was held valid, and an action at law against her for the breach thereof was sustained, and this upon the ground that such a contract was within the statute of 1869, giving her the right to sue in her own name for her earnings.   The court expressly put it upon the ground that the right to earnings mentioned in the statute is not limited to those only arising from manual labor.   It is asserted that a married woman may, with the consent of her husband, earn money in trade as well as at the wash-tub or with the sewing machine.

In every case the question has been, was the contract within the scope of the necessary implications of the statute? Each case must, in a measure, depend upon its own circumstances, and each case must be tested by the rule that the contract is not binding unless the capacity to make it is conferred by statute, expressly, or by its necessary implication. We find but one case directly in point, and that is the case of *Carpenter* v. *Mitchell, supra,* and it was there held, that a contract for the payment of the purchase money of land, conveyed to a married woman, did not bind her personally.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*