## RICHARD W. ROBINSON
## v.
## PETER PETERSON.

*Detinue—Insurance Policy—Recovery of—Agency.*

1. The action of detinue has not been abolished in this State.

2. The plea " not guilty " is not appropriate in detinue; the proper plea is " non-detinet."

3. A person who has the absolute or general property in certain specific goods, and the right to the immediate possession thereof, may support this . action though he has never had the actual possession, and if goods be delivered to one, to deliver to another, the latter may support it, the property being vested in him by delivery to his use; and if a bailee wrongfully deliver the goods to another, even before demand, he will continue liable.

4. An action of detinue may be maintained by a person insured, for the recovery of his policy, he having paid therefor, the same being withheld by the agent who wrote it.

5. The acceptance of a balance of the premium on a policy, though after a fire destroys the property covered, is evidence as against the agent receiving it, that the policy then became, if not before, the property of the assured.

6. In the case presented, this court holds, in view of the evidence, that the plaintiff ignorantly accepted the return of the premium paid by him; that the wrong on the part of the defendant in refusing to accept the premium subsequently tendered and deliver the policy, was such that strict proof could not be required by him, that the tender was kept good.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of DeWitt County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. LEMON & MONSON, for appellant.

Messrs. BARCLAY & GAMBREL, for appellee.

PLEASANTS, J. This action was in the unusual form of detinue for the recovery of an insurance policy, and the facts are undisputed.

In March, 1889, appellant, a soliciting agent, agreed with

appellee to give him or procure for him insurance on his buildings in Kenney, to the amount of $300, for a premium of $9. A few days afterward, about the 19th, he came to Kenney and was paid by appellee $3 of the premium, which he accepted, saying, "All right, when will you pay the rest?" to which appellee replied, "About the 26th." On the 25th the buildings were totally destroyed by fire. On the 26th, with knowledge of the loss, he received from appellee the balance of the premium, and being then asked by him for the policy, said to him, "You are all right," and told him he had given it to Mr. Halderman, who had a mortgage on the property destroyed. Halderman had told him some time before that if Peterson did not consummate that insurance, he would. He afterward told Halderman that "Peterson had made the insurance on it;" and again, both before and after the fire, that "it was all right," and "gave him to understand that the policy was paid for and that he (Robinson) had it in his possession." But on the 30th of March he met appellee at Clinton and said to him, "A thing has turned up that you must take your money back;" and got him to sign a paper, the contents of which were not shown. Peterson testified that he then told appellant he did not understand English writing; that Robinson said, "You must;" that he, Peterson, was "pretty near crazy—didn't have anything—nothing coming in, and it was pretty hard." It is quite evident that he did not willingly sign the paper and take back the money, but yielded to what, in his ignorance, he supposed to be a necessity. He was told that the company would not pay, but for what reason was stated, if any, does not appear.

On the 11th of May appellee made a written demand upon appellant for the policy and tendered back the premium, which was refused, and thereupon this action was brought. The value of the policy was shown to be $300; the verdict was for the plaintiff, and the judgment in the alternative for the policy, or its value as found.

Appellant did not deny any of the facts above stated or the declarations attributed to him. He did not produce the policy nor show its conditions, nor even give the name of the com-

pany. He testified that he received the policy, but based his defense wholly upon the fact that it had never been actually delivered to appellee, and some technical points upon the form of the action and rulings of the court.

The writ was a summons in the common form, and the declaration substantially as in trover. Defendant moved to dismiss the suit or strike the narr. from the files, which motion was overruled. He then filed a plea of "not guilty," which was stricken, on motion of plaintiff. He then filed the general issue (so called, though perhaps not properly), *non detinet*, on which the case was tried.

It is claimed that the action of detinue has not only become obsolete, but has been actually abolished. The Revised Statutes of 1845 contained a short chapter, (32,) providing that in this action, where the plaintiff filed an affidavit as therein prescribed, the clerk should issue a *capias* against the defendant, and regulating the proceedings thereon. There was no other statute relating to this action. In 1874 the Legislature, treating that revision as a whole, repealed it (excepting Chapter 104, entitled, Trespass), and re-enacted the most of it, in substance, under different arrangement, by the revision of that year; but neither in that nor in any subsequent legislation is anything to be found relating to detinue.

It is to be observed, however, that the action of detinue was not given by the repealed statute. The case of Felt v. Williams, 1 Scam. 206, in that form recognized as proper, was decided in 1835. It was a part of the common law of England, which another statute re-enacted in 1874, and still in force, declares shall be "the rule of decision" here, and "considered as of full force until repealed by legislative authority." Chap. 28, Sec. 1, R. S., 1874. The repeal of that statute did not affect the common law right. It simply took away the plaintiff's *right to bail* in the action, which had been conferred by the repealed statute.

Nor is the remedy by replevin as prescribed by the statute an available substitute for detinue in all cases. It is true that both give to the plaintiff his property *in specie*, or alternatively; if it can not be found, its value. But since by replevin

it is taken from the defendant before the right is finally determined, a bond is properly required of the plaintiff for its return if that shall be awarded; while in detinue, his possession remaining undisturbed until after final judgment against him, no such bond is required.   Thus it may often happen, from the plaintiff's inability to give the replevin bond, that he can not avail himself of that action.   Nor will it be for property taken for any tax, assessment, or fine levied, however wrongfully, against him, by virtue of any law of this State. Cadwallader v. Harris, 76 Ill. 371;   Thompson v. Weller, 85 Ill. 197;   Canadian Bank v. McCrea, 106 Ill. 289.   Besides, if replevin were a purely statutory remedy, and equally available and effectual, the statute providing it would not operate to abolish the existing common law remedy.   Wheaton v. Hibbard, 20 Johns. 292;   Canadian Bank v. McCrea, *supra.*

We are therefore not prepared to hold that this form of action has been abolished in this State.

No authority has been cited to show that "not guilty" was ever regarded as an appropriate plea in detinue.   The general issue, so called (though perhaps improperly), is *non detinet* (1 Chitty's Pl., side p. 488), and clearly "not guilty" is not of any other kind or class known to the law.   It was properly stricken from the files.

At common law *non detinet* put in issue the allegations of plaintiff's property or possession and defendant's withholding the chattel sued for, but by the "recent rules," etc., under a statute of William IV, its effect was limited in England to a denial of the alleged intention.   1 Ch. Pl., *ubi supra.*   We apprehend that those rules and that statute are of no force here.

A person who has the absolute or general property in certain specific goods and the right to the immediate possession thereof, may support this action, though he has never had the actual possession; and if goods be delivered to A, to deliver to B, the latter may support it, the property being vested in him by delivery to his use.   1 Chit., Pl., side p. 122. And if a bailee wrongfully deliver the goods to another, even before demand, he will continue liable.   Ibid. p. 123.

No right of the insurance company is here in question, or will be determined. The controversy is whether, as between appellant and appellee, the latter had such an interest in the policy as may support this action. That appellant had the policy and did not deliver it to appellee, he himself testified; and that appellee paid him according to their agreement, and thereupon asked him for it, which was a sufficient demand, if any were required to be shown, is clearly proved and not denied. That would seem to have made a *prima facie* case against appellant. Wood on Fire Ins., Sec. 13, and cases there cited. We know of no fact proved or any legal presumption that would overcome or rebut it. His acceptance of the balance of the premium, though after the fire, is evidence as against him that the policy thereupon became, if it was not before, the property of appellee. He did not state when he received it, but the fair inference is that it was before the fire. If the company did not intend or authorize its delivery to appellee until the premium was fully paid by him nor unless it was so paid before the loss occurred, it was for appellant to show it. It is clear that appellee did not so understand. We think that as against appellant the presumption is that the company authorized the credit which was given to appellee, or charged the amount of the premium to appellant and delivered the policy, absolutely on its part, to him to deliver to appellee. The mode of dealing between the company and its soliciting agent was not shown, nor were the conditions of the policy. Although he may have had a right to retain possession of the policy for his own security in respect to the unpaid premium, or as the agent of the company and for its security, yet if his agreement to credit appellee was valid, as between them, then, upon the payment made in conformity with it he became the agent of appellee, and held the possession for him. Glanz v. Gloeckler, 10 Ill. App. 484. He does not nor could he well deny the validity of that agreement as between them, nor his authority to bind the company also by it. The defense urged in the argument on this point is merely that the policy was never in fact in the personal possession of appellee. But possession by his agent, or abso-

Robinson v. Peterson.

lute property, with the right of immediate possession, would be sufficient; and there was evidence tending to prove both.

It is also contended that the proof did not correspond with the allegation in this, that the declaration alleges that the policy "covered" certain buildings located upon certain lots described by numbers and by metes and bounds, while the policy referred to in the evidence might have covered buildings upon any other lots in the town. The description of the lots in the evidence is not so full as in the declaration, but so far as it goes accords with it. That is no variance. It does not show a misdescription of either the policy or the property. Appellee was never permitted to see the policy. He did not attempt to describe it further than to state the property covered and the amount of the insurance. The proof may have been sufficient to identify the property testified of, with that alleged to have been so covered, although it did not embrace every particular of the allegation.

Counsel do not claim there was any valid surrender by appellee of his right to the policy. Their point is that it never was his property for want of delivery. The company gave possession, parted with it on their part, to appellant; which, as we have said, may have been or become a sufficient delivery to give it vitality. It is evident that appellee did not voluntarily surrender his right to it. He was given to understand that the company would not pay the loss, on account of something that was said to have "turned up," but what it was does not appear, and that he "must" take his money back. His consent does not seem to have been fairly obtained. When instructed as to his rights, he tendered the money again and demanded the policy. The wrong on the part of appellant was done when he refused to accept and comply, and he was never in position to require strict proof that the tender was kept good.

We perceive no serious error in the instructions. The defense was too technical to excite sympathy.

*Judgment affirmed.*