## Sarah Mygatt, Administratrix, Appellee, v. Southern Coal & Mining Company, Appellant.

1. STATUTES—*construction*. Where there is no equivocation in a statute, it is enforced as written.

2. STATUTES—*construction with reference to common law*. A statute is not to be construed as changing the common law beyond its expressly declared terms.

3. MINES AND MINERS—*act of 1911*. The miner's act as revised in 1911 by leaving out the words "or other unsafe conditions" does away with the necessity of the mine examiner observing and reporting on dangerous conditions not specifically enumerated.

4. STATUTES—*construction*. The enumeration of particulars excludes generals, in the construction of a statute.

5. MINES AND MINERS—*where miner is killed by break in the face of the coal*. In an action for the death of plaintiff's intestate, a miner, who was killed, while engaged in undercutting the face of the coal, by a large lump falling on him, defendant, the mining company, is not liable since, under the miner's act as amended in 1911, a crack in the face of the coal is not required to be marked by the mine examiner.

6. MINES AND MINERS—*assumed risk*. A judgment under common-law counts for the death of plaintiff's intestate cannot be sustained where intestate was an experienced miner and could have discovered the crack in the face of the coal which caused the accident.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1912. Reversed with finding of facts. Opinion filed April 23, 1913.

KRAMER, KRAMER & CAMPBELL, for appellant.

WEBB & WEBB, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The issues to be tried in this case were formed on two statutory counts and two common law counts. On September 13, 1911, appellee's intestate, John T. Mygatt, was working as a miner for the appellant, the Southern Coal and Mining Company, and was on said

day engaged in undercutting the face of the coal in the room where he and his buddy were working when a large lump of coal fell from the face of the coal on Mygatt, resulting in his injury and death.

At the time of his injury the new mining law as revised by the legislature of 1911 was in force. The statutory counts were each grounded on the revised law above referred to. One of the said counts charged that the mine examiner of the defendant, wilfully failed within twelve hours preceding the morning of the said day to enter said mine and inspect all the places where men are required in the performance of their duties to pass or to work, and in consequence of which plaintiff's intestate, John T. Mygatt, who was then and there in the employ of the defendant as a miner, in room 19, entered said room to engage in undercutting the face therein and while so engaged a large quantity of cracked, broken and insecure coal fell down to and upon him and so seriously crushed and mangled him that he afterwards died from the effects thereof. The other statutory count charges substantially, "That among the various rooms in said mine was room 19, running westwardly off of the first north entry of the main west entry, and the method of mining in said room was to undercut the vein at its face with a mining machine before blasting the same down with powder; that on the morning of the said day as a result of prior mining in said room the coal of the face of said room remained cracked, broken and insecure, the roofs liable to fall and injure the servants of the defendant while engaged in undercutting the same with the mining machine as aforesaid, of which the defendant knew."

Plaintiff further charges that "the mine examiner of the defendant within twelve hours preceding the morning of the said day went into the said room, made examination, in which room was such cracked, broken, insecure and loose condition of coal in the face of said room and wilfully failed and omitted to make a record

of the same in a book kept for that purpose before the miners were permitted to enter the mine on said day for work. By means whereof plaintiff's intestate, John T. Mygatt, who was then in the employ of the defendant was permitted to enter said room to assist in the undercutting of the coal, and while in said condition and while so engaged a lot of cracked, broken, insecure and loose coal fell down and upon him and so injured him that he afterwards died of said injury.'' The first common law count charges substantially that as a result of prior mining there existed and remained in the face of the coal a lot of loose, cracked, broken and insecure coal, which was liable to fall and injure the servants of defendants if undercut by the machine while in such condition, of which the defendant knew or could have known by an examination of due care; that deceased was suffered, permitted and allowed by the defendant to enter said room and mine coal therein by undercutting the same with a mining machine while the coal remained cracked, broken and insecure without notice or means of knowledge of said condition. The second common law count sets forth the negligence in substantially the same language as the first common law count.

To the declaration the defendant plead not guilty, and a trial by jury was had, resulting in a verdict and judgment for the plaintiff for $5,000, to which exceptions were duly entered by the defendant, and a motion for new trial being overruled the defendant prosecutes this appeal and asks a reversal of the judgment of the trial court.

Appellant contends there can be no recovery in this case under the statutory counts because there is no duty under the statute requiring the mine examiner to examine the face of the coal in the mine and to report the condition thereof. This presents the question as to what was the effect of the revision of the mining law by the legislature of 1911. The Act of

1899, as amended by the Act of 1907, was in force prior to July 1, 1911. That act provided that a mine examiner should be required at all mines and that it was his duty to visit the mine before the men were permitted to enter. That act declaring the duty of the mine examiner, provided among other things that: "He shall then inspect all places where men are expected to pass or to work and observe whether there are any recent falls or obstructions in rooms or roadways or accumulations of gas or other unsafe conditions; he shall especially examine the edges and accessible parts of recent falls and old gobs and air courses. As evidence of his examination of all working places he shall inscribe on the walls of each with chalk the month and the day of the month of his visit. When working places are discovered in which accumulations of gas or recent falls or any other dangerous condition exists he shall place a conspicuous mark thereat, as notice to all men to keep out; and at once report his findings to the mine manager." The foregoing provision of the mining act was revised by the Act of 1911, which latter act was in force at the time the accident complained of here occurred.

It becomes necessary to construe the effect made by the Revision of 1911, which placed upon the mine examiner the duty,

"4. To inspect all places where men are required in the performance of their duties to pass or to work and to observe whether there are any recent falls or dangerous roofs or accumulations of gas, or dangerous obstructions to the rooms or roadways, and to examine especially the edges and accessible parts of recent falls and old gobs and air courses.

5. As evidence of his examination of said rooms and roadways to inscribe in some suitable place on the walls of each, not on the face of the coal, with chalk, the month and the day of the month of his visit.

6. When working places are discovered in which

there are recent falls or dangerous roofs or dangerous obstructions, to place a conspicuous mark or sign thereat as notice to all men to keep out, and in the accumulation of gas to place at least two conspicuous obstructions across the roadway not less than 20 feet apart, one of which shall be outside of the last open cross cut.

7. Upon completing his examination to make a daily report of the same in a book kept for that purpose for the information of the company and the inspection of persons interested. This report shall be made each morning before the miners are permitted to enter the mine.

8. To take into his possession the entrance checks of all men whose working places have been shown by his examination record to be dangerous, and hand such entrance checks to the mine manager before the men are permitted to enter the mine in the morning."

An inspection of the two acts above set forth will disclose the fact that the words, "or other unsafe conditions" and "any other unsafe conditions," which appear in the Act of 1907 were omitted in the Revision of 1911. It is contended by appellant that the omission of such expressions made it clear that the mine examiner was not thereafter required to make an examination of the face of the coal. The language omitted in the revision had been repeatedly construed by the courts as applicable to certain conditions in mines among which was the unsafe condition found at the face of the coal. It would be unreasonable to suppose the legislature did not intend to change the operation of the law when they left out this language. It was no oversight. Many controversies had been waged over this particular wording of the statute as shown by the decisions of our courts of review, and we can draw no other conclusion from its absence in the new law than that the mine examiner was not to be thereafter required to inspect and mark places that had under the Act of 1907 been held necessary be-

cause of these particular words found in that act. The force and effect of decisions based on the words "or other unsafe condition" are no longer applicable to the law as it now stands. The present requirement is that the mine examiner observe whether there are "any recent falls or dangerous roofs or accumulations of gas or dangerous obstructions in rooms or roadways." It is only when he finds such conditions that he is required to place a conspicuous mark thereon.

The evidence in this case does not show, nor is it contended by appellee that any dangerous condition of the roof existed, nor was there any accumulations of gas, nor was there any dangerous obstructions in the room or roadway which caused the injury and death of Mygatt. The undisputed fact is that the coal which fell on Mygatt came. from the face of the room. It further appears from the evidence in this case that appellee's intestate was an experienced miner and was familiar with all conditions incident to mining coal; that on the day of the accident he and his buddy, Bert Rousch, were engaged in undercutting coal at the face of room 19 off of the first north entry on the west side of appellant's mine; Rousch was running the machine and Mygatt was working on the left side of the machine, shoveling away slack, dust and refuse that was thrown out by the working of the machine. The machine was a Sullivan Compressed Air Punching machine. The room in which they were working was about twenty-five feet wide, from rib to rib, and the vein of coal was about eight or nine feet in thickness. The undercutting was done by boards on which the machine is laid while the bit is handled by the machine runner, who guides it to the place where the coal is to be cut. The evidence shows that the pressure on the bit is from eighty to one hundred pounds to the square inch and the bit used is from fourteen to eighteen inches and the board-

is about nine feet long and three feet wide and is placed near the face of the coal at the left hand rib of the room and parallel with the rib. That the operator places the machine upon this board and starts to undercut the coal. The operator guides the bit in such a manner that when he has reached the back end of the undercutting the undercutting is at the floor of the room. The undercutting extends about five feet back from the face of the coal and under the same, and each board is run without moving the machine from the board. A board is completed when the coal is undercut for a distance of four and one-half to five feet from rib to rib and about five feet in depth back from the face of the coal. The pressure of the air on the bit to force it forward is very great.

In undercutting the evidence shows that a large amount of slack and ground up coal is thrown out, and one of the machine runners stands at the left of the machine with a shovel and throws back this ground up coal as it comes from the machine. This is the work that Mygatt was doing at the time he was injured. The purpose of the undercutting is to cause the coal to shoot down in larger quantities with less loss of merchantable coal.

The evidence further shows that it was the duty of the runner and the person shoveling the slack to examine the face of the coal and to sprag it if they found a condition that required spragging. Spragging is done by means of props or timbers so placed against the coal as to form a brace. The evidence in this case tends to show that there was a small crack in the face of the coal where Mygatt was working at the time of his injury. Some of the witnesses testified the crack was there plain to be seen and that some miners who had worked in the room before, had endeavored to wedge down the coal but failed. The evidence shows that on Monday, the 11th of September, two other machine runners cut one board and on

Tuesday, September 12th, other machine runners cut another board and part of a third one. On the morning of the 13th of September, Mygatt and his buddy, Rousch, went into the room to finish the undercutting. They finished the board which was left unfinished and then moved the machine to the right and started to cut out another board and had undercut about one-third of this, when it was about twenty inches deep into the coal and the width of four and one-half feet, the coal fell from the face upon Mygatt and caused his injury and death.

The crack mentioned in the evidence was over the place where Rousch and Mygatt were undercutting the last board. The miners who testified to having seen the crack on Monday and Tuesday before the accident gave no notice to any one in authority, of such condition. The mine manager testified that he did not know of its existence. Rousch testified that he looked at the face of the coal and did not see any crack. It further appears from the evidence that Mygatt and Rousch did not use sprags to brace the coal. The evidence further shows that the coal in that room was what is known as brash or brittle coal and that such is the character of all of the coal in that mine; and that the character of the coal was obvious to any experienced miner. It appears from the testimony of Rousch, that no examination was made to ascertain the condition of the coal before they proceeded to undercut it. The evidence also is that coal of that character is likely to crack, break and fall in undercutting and the customary method to prevent this is to use spragging.

A consideration of the whole of the evidence in this case shows there was somewhat of a crack in the face of the coal where Mygatt and Rousch were at work; that miners who had worked in that room on the two days preceding the accident had noticed the crack and had attempted by placing wedges in the crack to break it loose. The foregoing presents the substance of the

facts material to the discussion of the legal questions which are presented in this case.

We have then the facts showing that an experienced miner was using an undercutting machine at the face of the coal, that the mine manager who had examined the mine had placed no conspicuous mark to designate there was a dangerous condition at the face of the coal.

The charge under the statutory counts of the declaration is a wilful violation of the statute in that the mine examiner wilfully failed to inspect and mark as dangerous the condition that existed at the face of the coal on that morning. The sole reliance of counsel for the appellee to sustain the verdict under the statutory counts is based on this alleged wilful negligence.

Under the Constitution of this state operative coal miners are placed in a class wholly by themselves and by virtue of a constitutional mandate, the legislature must enact laws for their health and their safety. This has been deemed advisable by reason of their being exposed in their occupation to extraordinary hazards and perils different from other classes of laborers. *Kellyville Coal Co. v. Strine*, 217 Ill. 516; *Cook v. Big Muddy-Carterville Min. Co.*, 249 Ill. 41.

Under this constitutional requirement the legislature of this state enacted the Law of 1899, which was amended in 1907, and again amended in 1911.

No construction of the revised Act of 1911, in the revision of which the words, "or other unsafe conditions," was left out has been made by any court of review, so far as we are advised. The intention of the legislature in taking these words out of the law therefore becomes important in the determination of this case.

Courts cannot disregard the plain language of the statute and where there is no equivocation in a statute, it will be enforced as it is written. It cannot be extended beyond its clear meaning.

It is a canon of construction that a statute is not

to be construed as changing the common law, beyond
its expressly declared terms.  *Cadwallader v. Harris,*
76 Ill. 372; *Thompson v. Weller,* 85 Ill. 197.

We are not therefore at liberty to declare that the
present statute requires the inspection and marking
of "dangerous conditions" at the face of the coal
since the plain meaning of the act of revision was to
do away with such requirement.  In expressly desig-
nating the particular places in the mine, where in-
spection and marking should be made it leaves no room
for doubt as to what was intended by the omission
of the words employed in the former act.  The re-
quirement to examine and mark dangerous conditions
generally, has been wholly eliminated from the law
by the revised act.

Much controversy and litigation arose as to what
was included under the expressions, "or other unsafe
conditions" and "any other unsafe conditions" found
in the old act and the construction placed on them by
the courts must have been considered by the legis-
lature when they changed the law.

The intention of the legislature to relieve the mine
owner from the duties cast upon him by use of this
language in the Act of 1907 is emphasized by the very
fact of its omission in the revision.

A positive requirement[4] has been taken out of the
statute by positive legislative act.  The meaning and
importance of the words which were dropped out
could not have been overlooked by the legislature and
hence we must conclude some reason existed for the
change.  The effect of the change is to do away with
necessity for the mine examiner to make or record
"any other dangerous conditions" in the mine and
require of him that he "observe whether there are
any recent falls or dangerous roof or accumulations
of gas or dangerous obstructions in rooms and road-
ways" and mark and report on these alone.  Counsel
for appellee contends that the expression "to inspect

all places where men are required in the performance of their duties to pass or work'' which appears in the Act of 1911, is not limited to the duty of the mine examiner to observe whether there are any recent falls or dangerous roof or accumulations of gas or dangerous obstructions to rooms or roadways only, but would include inspection of the conditions of a room at the face of the coal also. The legislature while making it the duty of the mine examiner to inspect the places where men are required in the performance of their duties to pass or work, does not enjoin upon him the doing of anything in reference to the discoveries made by such inspection. The specific duties pointed out by the new law require that after inspection and examination he discovers working places in which there are recent falls or dangerous roof or dangerous obstructions he must place a conspicuous mark or sign thereat as notice to all men to keep out and to make a record of the fact in a book kept for that purpose for the information of all persons interested. Any failure on his part to perform such specifically required duties is deemed in law wilful negligence, should injury result to a miner through such failure.

He is now no longer required to observe and report on dangerous conditions generally. The enumeration of particulars excludes generals, in the construction of a statute.

In order to hold the defendant liable under the statutory counts it would be necessary to arrive at the conclusion that the omitted words produce no change in the law and that the law now stands as it stood before the revision. This of course we cannot do. The revision took away all right of miners under the statute to charge wilful negligence as to any other matters than those specifically mentioned.

The case at bar does not come within the existing provisions of the law. If there was a dangerous con-

dition at the face of the coal when Mygatt went to work there, such fact even if known to the mine examiner cast no duty on him, under the statute to either mark or report the same.

The case must fail too, under the common counts. The evidence shows that the deceased was an experienced miner about forty-seven years old. He was familiar with the conditions of the mine and the character of the coal therein. If it was an unsafe place to work it was because of the crack in the face of the coal. If it was dangerous at the time he commenced to work it was discoverable only from the physical features and conditions apparent or which could have been made to appear by observation to any one experienced in mining.

Appellee contends the mine examiner knew of its dangerous condition or by the exercise of proper care should have known of it. In reply appellant argues, that the deceased being an experienced miner knew or should have known of such condition.

There is no evidence to show superior knowledge of the examiner over the miner, and the court finds the following facts to be incorporated in the judgment in this case:

We find that the injury to deceased was caused by the fall of coal from the face of the room where he was working, a place which under the law is not required to be marked by the mine examiner.

That the deceased at the time of his injury was not in the exercise of due care for his own safety.

*Reversed with finding of facts.*