(No. 24725.—
CHARLES R. WALTER *et al.* Appellees, *vs.* THE NORTHERN INSURANCE COMPANY OF NEW YORK, Appellant.

*Opinion filed December 15, 1938—Rehearing denied Feb. 8, 1939.*

Farthing and Gunn, JJ., specially concurring.

Warnock, Williamson & Burroughs, for appellant.

Jacoby & Daly, for appellees.

Mr. Justice Stone delivered the opinion of the court:

Appellees sued appellant on a property-insurance policy in the circuit court of Madison county. The suit resulted in favor of the appellant, and, on appeal to the Appellate Court for the Fourth District, that court reversed the judgment of the circuit court and entered judgment for appellees in the sum of $1605. Appellees' cause of action is based on a clause in the policy, designated in this record a "riot clause," characterized in the contract as a supplemental contract, and covered damage by "explosion, riot, aircraft and self-propelled vehicles." The policy also provided that

the term "riot," whenever used therein, should include "direct loss from pillage and looting when such pillage and looting occurs during and at the immediate place of a riot; riot attending a strike, insurrection and/or civil commotion."

The facts upon which appellees base their suit are not controverted and are as follows: Sometime during the night of January 3, 1936, the building of appellees, which was undergoing alterations, enlargement and repair, was entered and a large amount of creosote was smeared on the walls, ceiling, windows and floors. The amount of the damage is not disputed. The repairs and enlargement of the building had progressed to a point where the house was in charge of painters. About 5:00 o'clock P. M., on January 3, the painter, on leaving, locked all the doors and all the windows save one, which opened onto the roof of a porch at the rear of the house. This he could not close completely. On returning the next morning he found the doors and windows locked as he left them. He also found a ladder leaning against the roof of the porch near the window which had been left a little way open. Fingerprints and foot tracks were found. The foot tracks were of different sizes and some were made by overshoes.

A neighbor testified that he lived the first house east of appellees' house and near thereto; that he and his wife occupied a bedroom in the rear of his house from the window of which he could look over the rear of appellees' house; that from the time he came home in the evening of January 3 until he left the next morning to go to work, his attention was not called to anything unusual about appellees' premises and he heard no unusual noise or disturbances and saw no one about appellees' premises.

The question, here, is whether this damage was the result of a riot. Counsel for appellees say that since the Criminal Code has defined "riot," acts constituting that offense under the criminal law constitute the basis of appellant's liability under their contract of insurance against

riot. Appellant, on the other hand, says (1) that the statute does not define riot, and (2) that riot, as used in the contract, should be defined in its ordinary sense; that here the damage was done stealthily and in a secretive manner, with an evident attempt to prevent noise or detection, and that to properly construe the word "riot," as used in the policy, the force or violence required to constitute such a riot is not merely the manual exertion necessary to accomplish the unlawful act, but includes resistance, or intent to resist constituted authority, or to overcome the protests of the owner of the property.

Section 249 of the Criminal Code (Ill. Rev. Stat. 1937, chap. 38, par. 504, p. 1165) provides as follows: "RIOT— If two or more persons actually do an unlawful act, with force or violence, against the person or property of another, with or without a common cause of quarrel, or even do a lawful act in a violent or tumultuous manner, the persons so offending shall be deemed guilty of a riot, and shall severally be fined not exceeding $200, or confined in the county jail not exceeding six months." Thus the statute defines riot, and since the clause in the policy on which this action is based, insures against a wrongful act, appellant is bound by the definition of such wrongful act in the statute against it.

This brings us then to a construction of the statute concerning riot. It is a cardinal rule of construction that effort shall be made to give effect to the intention of the legislature. (*Fowler* v. *Johnston City and Big Muddy Coal and Mining Co.* 292 Ill. 440; *Cohen* v. *Cohen,* 287 id. 269; *Smith* v. *County of Logan,* 284 id. 163; *Cummings* v. *People,* 211 id. 392.) By legislative enactment, this State, in 1819, adopted the common law of England and most of the acts of Parliament passed in aid thereof prior to the fourth year of James I, in so far as that law was applicable and of a general nature. The frequently quoted definition of riot at common law is that given by Hawkins in his Pleas

to the Crown and in Greenleaf on Evidence. Hawkins' definition is as follows: "A tumultuous disturbance of the peace by three or more persons assembling together of their own authority, with an intent mutually to assist one another against any one who shall oppose them in the execution of some enterprise of a private nature, and afterward actually executing the same in a violent and turbulent manner, to the terror of the people, whether the act itself was lawful or unlawful." Greenleaf, in his work on evidence, says of riot: "It is necessary that there be three or more persons tumultuously assembled of their own authority with intent mutually to assist one another against all who shall oppose them in the doing either of an unlawful act of a private nature or of a lawful act in a violent and tumultuous manner." (Greenleaf on Evidence, (16th ed.) sec. 216.) By the revision of 1827, the legislature, by section 114 of an act covering "Offenses against the public peace and tranquility," amended division 10 of the criminal law, as it theretofore existed, pertaining to riot, as follows: "If two or more persons actually do an unlawful act with force or violence against the person or property of another either with or without a common cause of quarrel, or even do a lawful act in a violent and tumultuous manner, the persons so offending shall be deemed guilty of a riot and on conviction shall severally be fined not exceeding $200, or imprisoned not exceeding six months." (Rev. Laws of 1827, p. 146.) It will be noted that this is the present language of the act.

Under the revision in 1845 the legislature re-enacted division 10 of "Offenses against the public peace and tranquility" as it was enacted in 1827, except that the word "either" was omitted between the words "another" and "with" in the second line of the act. (Rev. Stat. 1845, p. 171, sec. 117.) In the revision of statutes in 1874 (Rev. Stat. 1874, chap. 38, sec. 249, p. 390) provisions were enacted providing for the punishment of racing, rout, riot,

affray, unlawful assembly, and the like. Section 249 of the act pertaining to riot is *verbatim* the language of the revised statute of 1845 with the exception that the words "on conviction" between "and" and "shall" in the next to the last line of section 117, were eliminated. No change has been made in that section since 1874. For over a century the act has required that to constitute riot, two or more persons must "with force or violence" actually do an unlawful act against the person or property of another, or do a lawful act in a violent or tumultuous manner.

The question comes, then, on the construction of the terms "force" or "violence." Do they mean merely the manual force necessary to accomplish the act, or do they mean something more? There is no doubt that under the common law "force or violence" meant a concerted intent of the perpetrators to mutually assist one another against all who should oppose them in the doing of an unlawful act. (3 Greenleaf on Evidence, (16th ed.) sec. 216.) Thus the definition of riot, under the common law, meant more than the mere force necessary to do the act; it meant a defiance of constituted authority or of the rights of the person injured, or his effort to protect such rights. The terms "force" and "violence," as applied to offenses of this character, are, according to such standard lexicographers as Webster and Bouvier, synonymous.

It is a familiar rule of construction that statutes in derogation of the common law cannot be construed as changing the common law beyond what is expressed by the words of such statute or is necessarily implied from what is expressed. (*Thompson* v. *Weller,* 85 Ill. 197; *Canadian Bank of Commerce* v. *McCrea,* 106 id. 281; *Cadwallader* v. *Harris,* 76 id. 370.) It is also a familiar rule of construction that, in construing statutes in derogation of the common law, it will not be presumed that an innovation thereon was intended further than that which is specified

or clearly to be implied. *Smith* v. *Laatsch,* 114 Ill. 271; *Cadwallader* v. *Harris, supra.*

What, then, was the intention of the legislature in retaining the words "force" and "violence" in defining riot? Counsel for appellees argue that as it required force to smear the walls of appellees' house with creosote, the crime was committed with force or violence as the statute specifies. But is this the meaning of those terms which the General Assembly intended? It is significant that during the years in which the "Riot" statute has remained as it now is, numerous statutes have been enacted punishing crimes commonly classified as "malicious mischief." A great variety of these acts have been legislated against and punishment therefor prescribed, including those relating to the damaging or defacing of houses. By section 192 of the Criminal Code (Rev. Stat. 1937, chap. 38, par. 425, p. 1155) whoever willfully and maliciously destroys, injures or defaces any building or fixture attached thereto, without the consent of the owner, or injures or secretes any goods or chattels of another, shall be confined in the penitentiary, if the damage amounts to $15 or more, and fined and confined in the county jail if the damage is less than that amount. Nowhere in the statutes embraced under the head of "malicious mischief" are the words "force or violence" used in defining the offense. "Force or violence" in the "Riot" statute must, therefore, mean something more, otherwise the statute would as well have provided that if two or more persons actually do an unlawful act against the person or property of another, with or without a common quarrel, they shall be guilty of a riot.

In *Adamson* v. *City of New York,* 188 N. Y. 255, 80 N. E. 937, the Court of Appeals of that State had before it a statute which contained the provision that where three or more persons having assembled for any purpose, "disturb the public peace, by using force or violence, to any other person or to property, or threaten or attempt to com-

mit such disturbance or to do an unlawful act by use of force and violence accompanied with the power of immediate execution of such threat, they are guilty of a riot." The court, there, very properly observes that, in interpreting a statute defining an offense well known at common law, courts are entitled to seek the aid of common law definitions of such offense, except where the language of the statute is clearly in derogation thereof. In determining whether there had been, in that case, a riot, the court considered whether the evidence disclosed the existence of a mob or an assemblage of people of threatening attitude, acting in concert, with force and violence and determined to accomplish some injury to a person or property in spite of any resistance which might be offered. This was not only the common law definition of the term, but it is the universal conception and understanding of the meaning of the word "riot."

There is no substantial disagreement among common law authorities concerning the definition of the word "riot." *Hartford Fire Ins. Co.* v. *War Eagle Coal Co.* 295 Fed. 663, was an action on an insurance policy. The insurance company claimed exemption from liability because of provisions of the policy excluding liability for loss or damage caused by civil commotion. It was held that the evidence showed that the fire there occurring was not caused by riot, for there was no tumult or disturbance or even a demonstration before the fire, but, on the contrary, the conspirators went to the property about 1:00 o'clock in the morning and did their mischief secretly.

Counsel for appellees, in support of their contention that what occurred here was a riot, cite *Dougherty* v. *People*, 4 Scam. 179, *Darst* v. *People*, 51 Ill. 286, and *Bell* v. *Mallory*, 61 id. 167. The *Dougherty case* came to this court on a question of the sufficiency of an indictment charging the commission of an act by two or more persons with "force or violence," and that they had, therefore, com-

mitted riot. This was held to be a good indictment. No discussion appears as to what constitutes "force or violence." In the *Darst case,* the facts clearly showed a riot under the common law definition, and the interpretation of the statute of this State was not discussed. The *Bell case* was a suit for malicious prosecution. The plaintiff charged the defendant with falsely procuring his arrest on a charge of riot, placed against him and two other persons, "by entering his premises, using violent, harsh language toward him, by showing a pistol and threatening bodily injury to him," etc. The question was whether there was reasonable cause for the charge against the plaintiff. On review of the evidence this court found that the acts of the plaintiff and his associates came within the definition of riot. The acts there shown had all of the elements of fear, willful perpetration of an unlawful act in defiance of constituted authority and against the wishes and protests of the defendant. This court held such acts to have been done with force or violence and so constituted riot.

No case has been cited to us, and we have seen none, which holds that the words "force and violence," as used in the "Riot" statute, mean merely the manual force necessary to commit the act. If such had been the case, it would seem that no necessity arose for the numerous malicious mischief statutes which have been enacted. We are convinced that it was the intention of the legislature, in the enactment of the riot section of the Criminal Code, to retain the element of force and violence as it existed under the common law defining riot, and that such terms should be construed in the light of the common law. Applying such construction to the facts here, it is clear that no riot occurred. The acts were done stealthily, not in the presence of the party injured or persons in authority. There is no evidence that they were done in defiance of constituted authority but rather, on the other hand, the stealth with which the acts were committed indicated an attempt to

evade, rather than defy, the owner or officers of the law. As the act of defacing appellees' property was not a riot, it necessarily follows that the injury to their property was not covered by the policy of insurance sued upon, and the Appellate Court erred in reversing the judgment of the circuit court.

The judgment of the Appellate Court is reversed, and the judgment of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of circuit court affirmed.*

FARTHING and GUNN, JJ., specially concurring: We agree with the result reached in this opinion but not with all of the reasoning by which the result is reached.