GENE RAY BUSH *et al.*, Plaintiffs-Appellees, v. CHARLES SQUELLATI *et al.*, Defendants-Appellants.

Third District   No. 3—86—0329

Opinion filed April 6, 1987.

HEIPLE, J., dissenting.

Joseph Moschetti, of Coal City, for appellants.

Donald F. Black, of Morris, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiffs Gene and Louise Bush are the biological maternal grandparents of Anthony Squellati, age four years. Anthony's adoptive parents are defendants Charles and Sally Squellati. The Squellatis are Louise Bush's brother-in-law and sister and Anthony's biological great-uncle and great-aunt. Anthony's adoption took place on August 17, 1984, with the consent of his biological parents, when he was two years old. Subsequently, the biological parents were divorced.

The matter before us concerns the granting of a petition filed by the Bushes in the circuit court of Grundy County requesting court-ordered visitation with Anthony. We are asked to determine whether the trial court acted within its authority in ordering grandparental visitation and whether the court's decision that visitation was in Anthony's best interests was contrary to the manifest weight of the evidence.

The petition at issue was filed on November 11, 1985, after the Illinois Supreme Court handed down its decision in *Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 483 N.E.2d 512. According to the record before us, a prior petition requesting the same relief was filed by the Bushes in 1984, shortly after the minor child was adopted. That petition, it appears, was denied on ground that the Bushes did not have visitation rights as a matter of law.

Grandparents' visitation rights following a dissolution of the marriage of the child's biological parents arise either at common law or by virtue of section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (the statute) (Ill. Rev. Stat. 1985, ch. 40, par. 607(b)). At common law, grandparents could be entitled to court-ordered visitation with a minor child only in special, limited circumstances. (*Chodzko v. Chodzko* (1976), 66 Ill. 2d 28, 360 N.E.2d 60.) The special circumstances, approved by the *Chodzko* majority as justifying judicial

interference on behalf of grandparents, are not arguably present in the facts of this case. Accordingly, the trial court's authority to grant visitation must be determined with reference to the statute.

Prior to September 20, 1985, grandparents could become entitled to court-ordered visitation under section 607(b) if the trial court determined that such visitation was in the child's best interests. The statute, in pertinent part, read as follows: "(b) The court may grant reasonable visitation privileges to a grandparent *** of any minor child upon the grandparents' *** petition to the court, ***, if the court determines that it is in the best interests and welfare of the child and may issue any necessary orders to enforce such visitation privileges. Further, the court, pursuant to this subsection, may grant reasonable visitation privileges to a grandparent *** whose child has died where the court determines that it is in the best interests and welfare of the child." (Ill. Rev. Stat. 1983, ch. 40, par. 607(b).) This statutory right of visitation, which expanded the common law right, was judicially determined to extend to situations in which the minor child was adopted by one of its natural parents and that parent's new spouse (*Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 483 N.E.2d 512), but not to a situation in which neither the dissolution of marriage nor the death of a parent was alleged by the grandparents seeking visitation (*Towne v. Cole* (1985), 133 Ill. App. 3d 380, 478 N.E.2d 895).

Effective September 20, 1985, section 607(b) was amended by adding the following language:

"Further, adoption of the minor by the spouse of a legal parent after termination of the parental rights of the other parent does not preclude granting visitation privileges to a grandparent *** under this subparagraph (b); however, the court may impose restrictions upon such visitation privileges in order to prevent contact between the minor and the parent whose parental rights have been terminated." Ill. Rev. Stat. 1985, ch. 40, par. 607(b) (as amended by Pub. Act 84—667, eff. Sept. 20, 1985).

This legislation effectively embraces the situation presented in *Lingwall*, which was decided on the same date (September 20, 1985). In *Lingwall*, the court determined that the legislature did not intend to preclude consideration of grandparental visitation where a step-parent's adoption of the minor child terminated the legal relationship between the child and his grandparents. The *Lingwall* court reached this conclusion by reading section 20a of "An Act in relation to the adoption of persons ***" (Adoption Act) (Ill. Rev. Stat. 1983, ch. 40, par. 1525) in *pari materia* with section 607(b) of the Illinois Marriage

and Dissolution of Marriage Act, which was then silent with respect to the situation presented in the three cases before the court. The 1985 amended version of section 607(b), however, which clearly applies to the petition in this case, leaves no doubt that the legislature did not intend to authorize court-ordered grandparental visitation in every case in which a minor child is adopted by a relative, as opposed to a "stranger." See *Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 483 N.E.2d 512.

In reaching our conclusion, we apply familiar rules of statutory construction. A statute in derogation of common law must be strictly construed, and, when a statute contains both general and specific language relating to a topic, the specific controls. As previously indicated, there was no common law right to visitation for grandparents in the absence of special, limited circumstances. Under section 607(b), as originally adopted in 1982, the best interests of the child controlled. Because the liberalized privilege conferred by section 607(b) is in derogation of common law, it must be narrowly construed. Moreover, in its present form, the statute, while retaining the prefatory language generally providing for grandparental visitation upon the court's determination that it is in the child's best interests, now specifically speaks to situations involving adoption of the minor by the spouse of one parent following the termination of the parental rights of the other parent. (Such is not the situation before us, since Anthony's adoption preceded the dissolution of his biological parents' marriage.) Applying the rules of statutory construction, we conclude that the statute now permits grandparental visitation following an adoption *only* when the child remains with one parent and is adopted by that parent and his or her new spouse.

In our opinion, the legislature, by narrowly delimiting those situations in which grandparental visitation may be granted following a child's adoption, intended to promote the public policy underlying this State's adoption law—*i.e.*, "maximizing the pool of potential adoptive parents by guaranteeing, through the termination of the rights and responsibilities of the natural parents, that the adoptive parents will have 'the opportunity to create a stable family relationship free from unnecessary intrusion.' " *Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 214, 483 N.E.2d 512, 516, quoting *In re Roger B.* (1981), 84 Ill. 2d 323, 331, 418 N.E.2d 751.

Section 607(b), as amended, cannot, by its silence, be construed to authorize court-ordered visitation in the situation before us today, wherein the parental rights of both biological parents have been terminated by consent to the child's adoption by other relatives.

Finally, our review of the record on appeal convinces us that, even had the trial court acted within its statutory authority in granting the Bushes' petition on its merits, the evidence presented to the court failed to establish that court-ordered grandparental visitation was in Anthony's best interests. Since we have determined, however, that a reversal of the trial court's order is required by law, we need not further detail the unfortunate factual background that brought this matter to the attention of the court in the first instance. In the event our decision may seem harsh to Gene and Louise Bush, we believe it bears repeating that "any obligation which defendants may have to allow visitation remains a moral obligation not a legal one." *Towne v. Cole* (1985), 133 Ill. App. 3d 380, 387, 478 N.E.2d 895, 908.

For the foregoing reasons, we reverse the order of the circuit court of Grundy County.

Reversed.

WOMBACHER, J., concurs.

JUSTICE HEIPLE, dissenting:

This is a pitiful case involving a child of tender years who suffers from cerebral palsy. His parents first gave him up for adoption to an aunt and uncle, and the natural parents were then divorced following the surrender and adoption of the child.

The adoptive parents, who are relatives and neighbors of the maternal grandparents, are not on friendly terms with the maternal grandparents and resisted efforts at visitation.

The trial court granted grandparental visitation and this court reverses. I respectfully disagree.

A legalistic analysis and discussion of the relevant statutory and case authority adds nothing to the case. Suffice it to say that depending on one's view of the matter, the law can be read either way. What we have here, really, is a pure policy question. Should the grandparents in this situation have a legal right to reasonable visitation? I believe that they should have that right. Accordingly, I dissent.