(No. 65224.—■■■■)

GENE RAY BUSH *et al.,* Appellants, v. CHARLES SQUELLATI *et al.,* Appellees.

*Opinion filed April 25, 1988.*

George R. Black and Donald F. Black, of Black & Black, of Morris, for appellants.

Joseph V. Moschetti, of Coal City, for appellees.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiffs, Gene Ray Bush and Louise M. Bush, are the biological maternal grandparents of Anthony Squellati, a minor child. On August 17, 1984, Anthony, then two years old, was adopted by defendants, Charles Squellati and Sally Squellati. Both of Anthony's biological parents consented to this adoption. Subsequent to this, Anthony's biological parents were divorced. Defendant Sally Squellati, Anthony's legal mother after his adoption, is the sister of plaintiff Louise M. Bush, and is, therefore, Anthony's biological great-aunt.

Plaintiffs filed a petition on November 11, 1985, in the circuit court of Grundy County, requesting court-ordered visitation with Anthony. The circuit court ordered visitation for plaintiffs, and defendants appealed. The appellate court reversed the order of the circuit court (154 Ill. App. 3d 727), and we granted plaintiffs' petition for leave to appeal (107 Ill. 2d R. 315). We affirm the judgment of the appellate court.

At issue is the question of whether visitation privileges may be granted to biological grandparents under section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1985, ch. 40, par. 607(b)) when the biological parents of the minor child have both consented to the adoption of the child by others. The appellate court noted that grandparents' visitation rights following a dissolution of marriage of the child's biological parents arise either at common law or by virtue of section 607(b) of the Marriage Act. At com-

mon law, grandparents could be entitled to court-ordered visitation with a minor child only when special circumstances were shown. (*Chodzko v. Chodzko* (1976), 66 Ill. 2d 28.) Special circumstances sufficient to grant visitation rights to grandparents have been found where the natural father was inducted into the armed forces and he had petitioned the court to allow his parents to visit with his child during his absence (*Solomon v. Solomon* (1943), 319 Ill. App. 618), and where the natural father had died and had named his parents trustees of a fund which was for the benefit of his child (*Lucchesi v. Lucchesi* (1947), 330 Ill. App. 506). In *Boyles v. Boyles* (1973), 14 Ill. App. 3d 602, the appellate court found it to be error to deny the natural grandparents' petition for visitation as a matter of law where the child had just lost his mother and was extremely close to his grandparents by virtue of the fact that prior to his mother's death, the child had visited with the grandparents every day.

In *Chodzko*, this court found no special circumstances established which would warrant granting special visitation rights to the grandparents, and agreed with the contention of the mother that "visitation privileges can be extended to grandparents only when it is shown that special circumstances beyond mere mutual affection exist to justify an order awarding such visitation." (*Chodzko*, 66 Ill. 2d at 32.) The appellate court found no special circumstances which would justify judicial interference on behalf of grandparents present in this case. We agree with the appellate court that any authority of the circuit court to grant visitation to plaintiffs must be determined with reference to the Marriage Act.

Initially, we note that grandparents' visitation rights are statutorily provided for in the case of the death of both natural or adoptive parents in section 11—7.1 of the Probate Code of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 11—7.1). This section, which became effective in

1977, is inapplicable to the facts of the instant case: both natural parents voluntarily gave up their child for adoption, and both adoptive parents are still living.

Following the *Chodzko* opinion, the General Assembly amended section 607 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 607) by Public Act 82—344 to include a new subsection (b):

> "The court may grant reasonable visitation privileges to a grandparent or great-grandparent of any minor child upon the grandparents' or great-grandparents' petition to the court, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child and may issue any necessary orders to enforce such visitation privileges." (Ill. Rev. Stat. 1985, ch. 40, par. 607(b) (effective January 1, 1982).)

Subsection (b) was further amended by Public Act 82—1002, by addition of this sentence:

> "Further, the court, pursuant to this subsection, may grant reasonable visitation privileges to a grandparent or great-grandparents whose child has died where the court determines that it is in the best interests and welfare of the child." (Ill. Rev. Stat. 1985, ch. 40, par. 607(b) (effective September 17, 1982).)

This language was interpreted by our appellate court in *Towne v. Cole* (1985), 133 Ill. App. 3d 380. *Towne* involved an action by a grandmother seeking court-ordered visitation with her granddaughter. The grandmother's son and his wife, the natural parents of the minor child, were not involved in a dissolution of marriage proceeding, and no prior custody or adoption matters were involved. The court first considered the legislative history of section 607(b), as amended by Public Acts 82—344 and 82—1002. The court initially noted that section 607(b), as amended by Public Act 82—344, was unclear as to whether it applied to grandparent visitation where

there was no dissolution action pending, no adoption proceeding, no custody proceeding and no death of a parent. The court next considered the amendment of section 607(b) by Public Act 82—1002, which provided for visitation to a grandparent whose child had died. The court reasoned that if all grandparents were to be allowed to legally petition the court for visitation with a grandchild, this amendment would not have been necessary. The appellate court found "this provision [Public Act 82—1002] was inserted to provide a remedy for grandparent visitation when there were no dissolution proceedings but where one of the parents had died." *Towne*, 133 Ill. App. 3d at 384.

We agree with the reasoning of the appellate court in *Towne v. Cole* that the General Assembly did not, by enactment of Public Act 82—344, as section 607(b) of the Marriage Act, intend to provide all grandparents in all instances with a remedy of court-ordered visitation with their grandchildren. As of May 1985, section 607(b) authorized the remedy of grandparental visitation only in cases involving the divorce of the grandparents' child or where a child of the grandparent had died. The General Assembly once again amended subsection (b) by Public Act 84—667 to add to the end of the amendment effected by Public Act 82—1002:

"[M]oreover, the adoption of the minor child by the spouse of the child's surviving parent shall not preclude consideration by the court as to whether granting visitation privileges to such grandparents or great-grandparents is in the best interests and welfare of the child. Further, adoption of the minor by the spouse of a legal parent after termination of the parental rights of the other parent does not preclude granting visitation privileges to a grandparent or great-grandparent under this subparagraph (b); however, the court may impose restrictions upon such visitation privileges in order to prevent contact between the minor and the parent whose parental

rights have been terminated." Ill. Rev. Stat. 1985, ch. 40, par. 607(b).

On September 20, 1985, the date on which the above amendment became effective, this court decided *Lingwall v. Hoener* (1985), 108 Ill. 2d 206. The decision in *Lingwall* was based on section 607(b) as it read before the amendment of section 607(b) by Public Act 84—667.

*Lingwall* concerned several consolidated cases with similar facts: natural grandparents were seeking visitation rights with their grandchild or grandchildren. This was opposed in each case by the natural parent and that parent's new spouse, who had adopted the child. The issue presented for review to this court was the "narrow question of whether visitation privileges may be granted to a grandparent under section 607(b) of the Marriage Act when the parent through whom the grandparent is related to the child has been deprived of his parental rights as a result of the child's adoption by the other natural parent and that parent's new spouse." *Lingwall*, 108 Ill. 2d at 210.

This court rejected the natural and adoptive parent's argument in *Lingwall* that the issue of the grandparents' visitation rights was to be governed by the Illinois Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501 *et seq.*) and not by the Marriage Act. The facts in *Lingwall* concerned both a divorce and a subsequent adoption. *Lingwall* held "that the Marriage Act also continues to govern the issue of grandparental visitation when, subsequent to a divorce, a child is adopted by one of the natural parents and that parent's new spouse." *Lingwall*, 108 Ill. 2d at 213.

Both the Marriage Act and the Adoption Act share the common goal of proceeding in the best interest of the child; in cases involving an adoption by a natural parent and a new spouse, "the court must examine all relevant factors to determine whether grandparental vis-

itation is in the child's best interest." *Lingwall*, 108 Ill. 2d at 213.

The holding in *Lingwall* is consistent with the statutory amendment by the General Assembly of Public Act 84—667. Adoption of a minor child by the spouse of a legal parent after termination of the parental rights of the other parent does not preclude granting visitation privileges to a grandparent under section 607(b). The judicial decision and the statutory determination of this question became effective on September 20, 1985. *Lingwall*, and section 607(b), as amended by Public Act 84—667, changed the common law as it relates to grandparents who seek visitation with their grandchild after the divorce of their child from the parent with legal custody of the child, and after the adoption of the child by that parent's new spouse.

The adoption of a minor by the new spouse of a parent with legal custody of the minor has come to be known as a "related adoption." Plaintiffs argue that the adoption of Anthony by his biological great-aunt and her husband should be treated by this court as a "related adoption" and as such should come within the holding of *Lingwall*. Plaintiffs point to the Adoption Act's section 1(B) definition of a "related child" in support of this argument:

> "B. 'Related child' means a child subject to adoption where either or both of the adopting parents stands in any of the following relationships to the child by blood or marriage: parent, grand-parent, brother, sister, step-parent, step-grandparent, step-brother, step-sister, uncle, aunt, great-uncle, great-aunt, or cousin of first degree." (Ill. Rev. Stat. 1985, ch. 40, par. 1501(B).)

We find plaintiffs' argument to be without merit. The General Assembly has determined that under the Adoption Act, the adoption of a related child is to be treated differently in certain instances than the adoption of a

child other than a related child. (See Ill. Rev. Stat. 1985, ch. 40, par. 1507 ("Petition, contents, verification, filing"); Ill. Rev. Stat. 1985, ch. 40, par. 1508 ("Investigation").) It is for this purpose that a "related child" is defined in section 1(B). This statutory definition of a "related child" is inapplicable in a section 607(b) grandparental visitation petition.

Plaintiffs also argue that the adoption of Anthony by defendants is not an adoption by "strangers" and should therefore be treated as a "related adoption" for purposes of grandparental visitation under section 607(b) of the Marriage Act. The characterization of the adoption of Anthony by defendants as a related adoption, however, is of no consequence under the facts of this case. As section 607(b) now reads, plaintiffs simply have no legal standing to bring a petition for court-ordered visitation. Here, there is no divorce proceeding in which plaintiffs have a right to intervene. Instead, the natural parents have voluntarily given up Anthony for adoption. That the adoptive parents are the natural great-aunt and great-uncle of Anthony does not change this.

As has been shown, section 607(b) is in derogation of the common law. "[S]tatutes in derogation of common law are to be strictly construed and nothing is to be read into such statutes by intendment or implication." (*Summers v. Summers* (1968), 40 Ill. 2d 338, 342; *In re W.W.* (1983), 97 Ill. 2d 53, 57.)

> "It is a familiar rule of construction that statutes in derogation of the common law cannot be construed as changing the common law beyond what is expressed by the words of such statute or is necessarily implied from what is expressed. (*Thompson v. Weller*, 85 Ill. 197; *Canadian Bank of Commerce v. McCrea*, 106 id. 281; *Cadwallader v. Harris*, 76 id. 370.) It is also a familiar rule of construction that, in construing statutes in derogation of the common law, it will not be presumed that an innovation thereon was intended further than that which is

specified or clearly to be implied. *Walter v. Northern Insurance Co.,* 370 Ill. 283, 288-289." (*Russeell v. Klein* (1974), 58 Ill. 2d 220, 225.)

Applying these rules of statutory construction, we conclude that section 607(b), as amended by Public Act 84—667, now permits grandparental visitation following an adoption only when the child remains with one parent and is adopted by that parent and his or her new spouse. Section 607(b), as amended, cannot, by its silence, be construed to authorize court-ordered visitation in this case. It is for these reasons we find that it is for the General Assembly and not this court to expand grandparental visitation rights under section 607(b).

We stress that the fact that plaintiffs are not entitled to court-ordered visitation in no way limits their ability to see Anthony, provided that defendants agree to plaintiffs' request. Defendants are free to allow anyone they wish to visit Anthony.

The fact remains that defendant, Sally Squellati, and plaintiff, Louise M. Bush, are sisters. It is most unfortunate that this legal battle has resulted due to the problems between them. It is the sincere 'desire of this court that these sisters find a way to bridge the gap which has formed in their relationship. In order for plaintiffs to be able to see Anthony, they will have to meet with defendants outside the courthouse doors and work out their family problems without court supervision.

*Affirmed.*