PARKER, Justice.
The petitioners, E.R.G. and D.W.G., grandparents of minor children, challenge the decision of the Court of Civil Appeals, which, among other things, upheld § 30-3-4.1, Ala.Code 1975, the Alabama Grandparent Visitation Act (“the Act”), against a constitutional challenge by E.H.G. and C.L.G., the parents of the minor children.[1] E.H.G. v. E.R.G., 73 So.3d 614 (Ala.Civ. App.2010). We affirm the judgment of the Court of Civil Appeals, but we do so on a rationale different from the rationale given by that court. Because the Act authorizes a court to award visitation to a grandparent whenever doing so “is in the best interests of the minor child,” potentially overriding a parent’s decision to deny the grandparent such visitation, without regard for the fundamental right of a fit parent to direct the upbringing of his or her child, we hold that the Act is unconstitutional.

Background

This ease arises out of a dispute between the parents and the grandparents of minor children. At one time, E.R.G. and D.W.G. (“the grandparents”) and E.H.G. and C.L.G. (“the parents”) had a very close relationship, and the grandparents participated in the lives of both the parents and the minor children. The failure of a business shared by the father and the grandfather caused financial difficulties for both families; family relationships subsequently disintegrated. The parents first restricted, and eventually terminated, the grandparents’ contact with the grandchildren.
Desirous of maintaining their relationship with their grandchildren, the grandparents petitioned the Jefferson Circuit Court for visitation under the Act. The parents argued in their response to the grandparents’ petition that the Act was unconstitutional both on its face and as it applied to them:
*638 “The subject statute is constitutionally infirm because it fails to expressly provide that the parents’ decision is presumed to be in the best interest of the children; it violates due process by failing to require a showing of harm to the children as a condition precedent to granting visitation; it gives grandparents a cause of action regardless [of] whether the parents’ refusal of visitation is [ Reasonable or unreasonable, and the State has no compelling interest in establishing a cause of action for a reasonable parental denial of grandparent visitation and there is no rational relationship between the burden of such provision and any public goal.”
Because the parents raised a challenge to the constitutionality of a statute, the attorney general was served. The attorney general waived further participation in the proceedings, and the trial court appointed a guardian ad litem to represent the interests of the grandchildren. The guardian at litem recommended granting the grandparents visitation with the grandchildren. Agreeing with the guardian ad litem that continued alienation from the grandparents was not in the best interest of the children, the trial court awarded the grandparents visitation rights. Its order stated:
“ ‘The Court therefore, after having engaged the presumption in favor of the ... parents, is convinced, through clear and convincing evidence, that the [parents’] exertion of control over the lives of the children to the extent of isolating them from their relationship with their grandparents and alienating them from an otherwise loving relationship is not in the best interest of the said minor children.’ ”
E.H.G., 73 So.3d at 620 (quoting the order of the trial court). The parents moved to set aside the judgment, which motion the trial court denied. The parents then appealed to the Court of Civil Appeals, and the trial court issued a stay of its visitation order pending appeal. That court reversed the judgment of the trial court and rendered a judgment in favor of the parents.
In its opinion, the Court of Civil Appeals went immediately to the constitutional question presented:
“In this appeal, this court considers whether a circuit court may constitutionally award grandparents visitation with their grandchildren over the objection of the children’s fit, natural, custodial parents without providing clear and convincing evidence that the denial of such visitation would cause the children substantial harm.

“The Alabama Grandparent Visitation Act

“The Grandparent Visitation Act (‘the Act’), Ala.Code 1975, § 30-3-4.1, provides, in pertinent part:
“ ‘(b) Except as otherwise provided in this section, any grandparent may file an original action for visitation rights to a minor child if it is in the best interest of the minor child and one of the following conditions exist:
[[Image here]]
“‘(5) When the child is living with both biological parents, who are still married to each other, whether or not there is a broken relationship between either or both parents of the minor and the grand *639 parent and either or both parents have used their parental authority to prohibit a relationship between the child and the grandparent.
[[Image here]]
“ ‘(d) Upon the filing of an original action ..., the court shall determine if visitation by the grandparent is in the best interests of the child. Visitation shall not be granted if the visitation would endanger the physical health of the child or impair the emotional development of the child. In determining the best interests of the child, the court shall consider the following:
“ ‘(1) The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents.
“ ‘(2) The preference of the child, if the child is determined to be of sufficient maturity to express a preference.
“‘(3) The mental and physical health of the child.
“ ‘(4) The mental and physical health of the grandparent or grandparents.
“‘(5) Evidence of domestic violence inflicted by one parent upon the other parent or the child. If the court determines that evidence of domestic violence exists, visitation provisions shall be made in a manner protecting the child or children, parents, or grandparents from further abuse.
“‘(6) Other relevant factors in the particular circumstances, including the wishes of any parent who is living.’ ”
E.H.G., 73 So.3d at 616-17 (footnote omitted).
Although the Court of Civil Appeals correctly stated that “the Act does not expressly require a petitioning grandparent to prove that the denial of the requested visitation would cause harm to the child,” 73 So.3d at 617, it went on to hold that, in accordance with the United States Constitution, petitioning grandparents must prove that the denial of the requested visitation would cause harm to the child.
In its discussion, the Court of Civil Appeals quoted from several authorities, including Justice Scalia’s dissent in Troxel v. Granville, 530 U.S. 57, 91, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (Scalia, J. dissenting), that recognize that the right of parents to make decisions regarding a child’s care, control, education, health, and religion, as well as with whom the child will associate, is a fundamental right that arises “as an inherent consequence of the parent-child relationship independent of any caselaw, statute, or constitutional provision.” 73 So.3d at 621. Because a parent’s right is fundamental, the Court of Civil Appeals held, a state must have a compelling interest before it can legislate away that right, and several states “have concluded that the only compelling interest justifying [grandparent-visitation statutes] is the prevention of harm to the child.” 73 So.3d at 626. A best-interests-of-the-child standard alone is insufficient to justify infringing on the fundamental right of the parents. The Court of Civil Appeals noted that “a court cannot award grandparent visitation without clear and convincing evidence demonstrating that denial of the requested visitation would harm the child.” 73 So.3d at 626. Thus, the Court of Civil Appeals held that a grandparent petitioning for visitation under the Act must prove *640 that the child will be harmed if the visitation is denied before a trial court may impinge the fundamental parental right in question. It wrote:
“Recognizing that we are not bound by the plurality opinions in [Dodd v. Burleson, 932 So.2d 912 (Ala.Civ.App. 2005) (‘Dodd I’) ], [Dodd v. Burleson, 967 So.2d 715 (Ala.Civ.App.2007) (‘Dodd II’)], and L.B.S. [v. L.M.S., 826 So.2d 178 (Ala.Civ.App.2002) ], we hereby adopt the reasoning of Hawk [v. Hawk, 855 S.W.2d 573 (Tenn.1993),] and the majority of eases from other jurisdictions by holding that a grandparent seeking visitation with a child over the objection of a fit, natural, custodial parent, as an initial matter, must prove by clear and convincing evidence that the denial of the requested visitation would harm the child.
“In following Hawk and similar decisions, we do not intend to minimize the relationship between grandparents and grandchildren or the valuable contributions that that relationship may make to the development of the grandchild, to which the dissent refers. 73 So.3d at 632. As stated in R.S.C. [v. J.B.C., 812 So.2d 361 (Ala.Civ.App.2001) (plurality opinion) ], supra:
“ ‘If a grandparent is physically, mentally, and morally fit, then a grandchild ordinarily will benefit from a relationship with that grandparent. That grandparents and grandchildren normally can be expected to have a special bond cannot be denied. Each can benefit from contact with the other. Among other things, the child can learn lessons of love, respect, responsibility, and family and community heritage.’
“812 So.2d at 365. However, we must acknowledge that the statutory right of a grandparent to visit with children over the objection of a fit, natural, custodial parent is only of a recent origin, appearing for the first time in this state in 1980. See Weathers v. Compton, 723 So.2d 1284, 1286 (Ala.Civ.App.1998). That right hardly stands as an enduring tradition of Western civilization on equal footing with the parental right to the custody and control of children. See J.S. v. D.W., 835 So.2d 174, 184 (Ala.Civ. App.2001), rev’d on other grounds, Ex parte D.W., 835 So.2d 186 (Ala.2002), on remand, 835 So.2d 191 (Ala.Civ.App.2002). Consequently, although the state may have a legitimate interest in fostering the grandparent-grandchild relationship, R.S.C., 812 So.2d at 365, the state may not do so in a manner that unduly infringes on fundamental parental rights. To prevent just such overreaching, we hold that the state may overrule the objection of a fit, natural, custodial parent to grandparent visitation only in order to prevent harm to the child.”
E.H.G., 73 So.3d at 628-29 (footnote omitted).
Although the plain language of the Act does not require that harm be shown, the Court of Civil Appeals judicially imposed a “harm” standard in an attempt to uphold the Act:
“In so ruling, we do not, as the dissent suggests, 73 So.3d at 630-33, declare the Act to be facially unconstitutional. As presently drafted, the Act requires a trial court in a grandparent-visitation case to consider ‘[ojther relevant factors in the particular circumstances.... ’ Ala.Code 1975, § 30-3-4.1(d)(6). Since we hold that a showing of harm to the child resulting from the denial of visitation is a prerequisite to any award of visitation under the Act, we conclude that subsection (d)(6) necessarily encompasses that showing as a ‘relevant factor’ *641 and that the Act is, therefore, facially valid. See L.B.S. [v. L.M.S.], 826 So.2d [178] at 185 [ (Ala.Civ.App.2002) ] (holding that the judiciary could adopt a construction of a statute that would uphold its constitutionality). We emphasize, however, that the showing of harm is not to be weighed along with the other factors in § 30-3-4.1(d)(6). Rather, consistent with L.B.S. and J.W.J. [v. P.K.R., 976 So.2d 1035 (Ala.Civ.App.2007) ], a court considering a petition for grandparent visitation must first presume the correctness of the decision of a fit, natural, custodial parent as to grandparent visitation and then determine whether the petitioning grandparent has presented clear and convincing evidence that the denial of the requested visitation will harm the child. If so, the court may then weigh the other statutory factors to determine the mode and extent of grandparent visitation necessary to alleviate the harm to the child without further infringing on the fundamental rights of the parents. See L.B.S. v. L.M.S., 826 So.2d at 192 (Murdock, J., concurring in the judgment of reversal only) (noting that due process requires ‘that the court may order only visitation narrowly tailored to address an adjudged harm’).”
E.H.G., 73 So.3d at 629. Thus, the Court of Civil Appeals held that because harm to the child can be addressed under the “other relevant factors” provision of the Act, the Act is not unconstitutional on its face. However, although it included it among the “other relevant factors” of the Act, the Court of Civil Appeals ruled that the showing of harm is not simply another factor, but must be the first factor considered to overcome the presumption of correctness attended the parent’s decision to deny the requested visitation. Then, only if clear and convincing evidence is presented to show that depriving the child of visitation with the grandparent will harm the child, may the trial court consider the remaining “other relevant factors” expressly presented in the Act.

Standard of Review

This Court takes very seriously a challenge to a statute based on constitutional grounds.
“ ‘The standard of review for determining the constitutionality of a statute was stated in State Board of Health v. Greater Birmingham Ass’n of Home Builders, Inc., 384 So.2d 1058, 1061 (Ala.1980):
“ ‘ “Before turning to the constitutional issue posed in this case, it is appropriate to reiterate the fundamental proposition that validly enacted legislation is presumed to be constitutional. As we stated in Mobile Housing Board v. Cross, 285 Ala. 94, 97, 229 So.2d 485, 487 (1969):
“ ‘ “ ‘Every presumption is in favor of the constitutionality of an act of the legislature and this court will not declare it invalid unless in its judgment, the act clearly and unmistakably comes within the inhibition of the constitution.’
“ ‘ “We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations. See Ex parte Huguley Water System, 282 Ala. 633, 213 So.2d 799 (1968).”
“ ‘In Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala.1984), this Court stated:
“ ‘ “In determining whether the act is constitutional, we are bound by the following presumption:
*642 “ ‘ “ ‘[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and in-tendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.’
“ ‘ “Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944).”
“ ‘See Crosslin v. City of Muscle Shoals, 486 So.2d 862, 863 (Ala.1988).’
“Town of Vance v. City of Tuscaloosa, 661 So.2d 739, 742-43 (Ala.1995).”
Lunsford v. Jefferson County, 973 So.2d 327, 329-30 (Ala.2007).
We also noted in Lunsford:
“In Rice v. English, 835 So.2d 157, 162 (Ala.2002), this Court, citing Ex parte Selma & Gulf R.R., 45 Ala. 696 (1871), reiterated ‘the settled principle that the people have forbidden the Legislature from conducting itself in a manner inconsistent with their constitution and when it does, it is incumbent upon the judiciary to nullify a legislative enactment contrary to the constitution.’ ”
Lunsford, 973 So.2d at 330.

The Constitutional Question

The right of parents to direct the upbringing of their children has long been recognized as fundamental by the United States Supreme Court and, therefore, as a right protected by the Fourteenth Amendment:
“The Fourteenth Amendment provides that no State shall ‘deprive any person of life, liberty, or property, without due process of law.’ We have long recognized that the Amendment’s Due Process Clause, like its Fifth Amendment counterpart, ‘guarantees more than fair process.’ Washington v. Glucksberg, 521 U.S. 702, 719 (1997). The Clause also includes a substantive component that ‘provides heightened protection against government interference with certain fundamental rights and liberty interests.’ Id., at 720; see also Reno v. Flores, 507 U.S. 292, 301-302 (1993).
“The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399, 401 (1923), we held that the ‘liberty’ protected by the Due Process Clause includes the right of parents to ‘establish a home and bring up children’ and ‘to control the education of their own.’ Two years later, in Pierce v. Society of Sisters, 268 U.S. 510, 534-535 (1925), we again held that the ‘liberty of parents and guardians’ includes the right ‘to direct the upbringing and education of children under their control.’ We explained in Pierce that ‘[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.’ Id., at 535. We returned to the subject in Prince v. Massachusetts, 321 U.S. 158 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. ‘It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for ob *643 ligations the state can neither supply nor hinder.’ Id., at 166.
“In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Stanley v. Illinois, 405 U.S. 645, 651 (1972) (‘It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children “come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements” ’ (citation omitted)); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972) (‘The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of them children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition’); Quilloin v. Walcott, 434 U.S. 246, 255 (1978) (‘We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected’); Parham v. J.R., 442 U.S. 584, 602 (1979) (‘Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course’); Santosky v. Kramer, 455 U.S. 745, 753 (1982) (discussing ‘[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child’); Glucksberg, supra, at 720 (‘In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the “liberty” specially protected by the Due Process Clause includes the righ[t] ... to direct the education and upbringing of one’s children’ (citing Meyer and Pierce)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.”
Troxel, 530 U.S. at 65-66. This Court has also recognized the fundamental nature of parental rights. In Ex parte J.E., 1 So.3d 1002 (Ala.2008), for example, we noted that “ ‘[t]he right to parent one’s child is a fundamental right.’” 1 So.3d at 1006 (quoting K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003)).
The fundamental right of parents to direct the education and upbringing of their children has both substantive and procedural components:
“It is, of course, true that ‘freedom of personal choice in matters of ... family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.’ Cleveland Board of Education v. LaFleur, 414 U.S. 632, 639-640 (1974). There does exist a ‘private realm of family life which the state cannot enter,’ Prince v. Massachusetts, 321 U.S. 158, 166 (1944), that has been afforded both substantive and procedural protection.”
Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 842, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (footnotes omitted). The substantive component of this right includes broad authority to make decisions concerning the “care, custody, and control,” Troxel, 530 U.S. at 66, of the child: “For centuries it has been a canon of the common law that parents speak for their minor children. So deeply imbedded in our traditions is this principle that the Constitution itself may compel a State to respect it.” Parham v. J.R., 442 U.S. 584, 621, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (Stewart, J., concurring) (foot *644 note omitted). That substantive due-process right of parents includes the right to make decisions regarding the child’s companions.
The substantive fundamental right of parents to make decisions regarding the “care, custody, and control” of their children is premised on the legal presumption that fit parents act in the best interests of their children:
“[T]here is a presumption that fit parents act in the best interests of their children. As this Court explained in Parham [v. J.R., 442 U.S. 584 (1979) ]:
“ ‘[0]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations .... The law’s concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life’s difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.’ 442 U.S., at 602 (alteration in original) (internal quotation marks and citations omitted).’
“Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent’s children.”
Troxel, 530 U.S. at 68-69. In this context, therefore, the Constitution requires that a prior and independent finding of parental unfitness must be made before the court may proceed to the question whether an order disturbing a parent’s “care, custody, and control” of his or her child is in that child’s best interests.
The state’s compelling interest is limited to overruling the decisions of unfit parents. As the United States Supreme Court said in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1888, 71 L.Ed.2d 599 (1982), it is only “[a]fter the State has established parental unfitness at that initial proceeding, [that] the court may assume at the dispositional stage that the interests of the child and the natural parents do diverge.” 455 U.S. at 760. Unless the parents are shown by clear and convincing evidence to be unfit, the state’s interest is not compelling: “[T]he State registers no gain towards its declared goals when it separates children from the custody of fit parents.” Stanley v. Illinois, 405 U.S. 645, 652, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). All “parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody.” 405 U.S. at 658. In the absence of clear and convincing proof that a parent is unfit, the state’s basis for intervention through the judicial system evaporates. “The State’s interest in caring for the children is ‘de minimis ’ if the father is in fact a fit parent.” Quilloin v. Walcott, 434 U.S. 246, 248, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978).
Because parents are presumed to act in the best interests of their children, the law also presumes parental “care, custody, and control” to be superior to that of third persons under ordinary circumstances:
“The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that this primary parental right of custody is in the best interest *645 and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question.”
Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983). That same presumption is applicable to cases involving visitation with non-parents.
State action that limits a fundamental right is generally subject to strict scrutiny. Troxel, 530 U.S. at 80 (Thomas, J., concurring in judgment); Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (“[C]lassifications affecting fundamental rights ... are given the most exacting scrutiny.”); Graham v. Richardson, 403 U.S. 365, 375, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (“It is enough to say that the classification involved ... was subjected to strict scrutiny under the compelling state interest test ... because it impinged upon the fundamental right of interstate movement.”). Strict scrutiny generally requires that the state show a compelling interest, advanced by the least restrictive means. As the United States Supreme Court said in the context of the First Amendment: “The Government may, however, [limit a fundamental right] in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.... It is not enough to show that the Government’s ends are compelling; the means must be carefully tailored to achieve those ends.” Sable Commc’ns of California, Inc. v. FCC, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).
The nature of a compelling interest varies based on the circumstances, but it is a very stringent standard; as the United States Supreme Court said in Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972): “The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to” a fundamental right. 406 U.S. at 215 (emphasis added). Therefore, “we must searchingly examine the interests the state seeks to promote.” 406 U.S. at 221. See also Troxel, 530 U.S. at 80 (Thomas, J., concurring) (“Here, the State of Washington lacks even a legitimate governmental interest — to say nothing of a compelling one — in second-guessing a fit parent’s decision regarding visitation with third parties.”). The decisions of the trial court and the Court of Civil Appeals here properly applied a clear-and-convincing-evidence standard, as required by Santosky, supra. The clear and convincing evidence must demonstrate, however, that the state has a compelling interest requiring interference with the rights of the parents and that that interest is being advanced by the least restrictive means. The Act fails to provide for the application of this standard.
The core of parental rights is the right of a parent to make decisions about the upbringing of his or her child. In particular, the common law permitted parents to determine their children’s companions: “[T]he common law rule is that parents have a ‘paramount right ... to custody, care and nurture of their children’ ... and that right includes the right to determine with whom their children shall associate.” McIntyre v. McIntyre, 341 N.C. 629, 631, 461 S.E.2d 745, 748 (1995) (quoting Petersen v. Rogers, 337 N.C. 397, 402, 445 S.E.2d 901, 903 (1994)). *646 Unlike parents, grandparents had no rights in regard to their grandchildren at common law. “Under common law principles, grandparents lacked any legal right to visitation and communication with the grandchildren if such visitation was forbidden by the parents.” Ex parte Bronstein, 434 So.2d 780, 782 (Ala.1983). Therefore, the rights of grandparents to visitation with their grandchildren exist only as created by the Act; they are purely statutory. “Alabama is a common law state, and there is no question that the common law did not allow grandparents a legal right of visitation.” 434 So.2d at 783. Even in jurisdictions that disagreed with that principle, grandparent visitation was limited. “At common law, grandparents could be entitled to court-ordered visitation with a minor child only when special circumstances were shown.” Bush v. Squellati, 122 Ill.2d 153, 155-56, 522 N.E.2d 1225, 1226, 119 Ill.Dec. 366, 367 (1988). Because grandparents lacked the right to direct the upbringing of their grandchildren, there was no legal presumption that the grandparents’ actions were in the child’s best interest.
As the Illinois Supreme Court said in Bush: “ ‘It is a familiar rule of construction that statutes in derogation of the common law cannot be construed as changing the common law beyond what is expressed by the words of such statute or is necessarily implied from what is expressed.’ ” 122 Ill.2d at 161, 522 N.E.2d at 1229, 119 Ill.Dec. at 370 (quoting Russell v. Klein, 58 Ill.2d 220, 225, 317 N.E.2d 556, 559 (1974)). See § 1-3-1, Ala.Code 1975 (“The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature.”). Therefore, we continue to apply the common law to deny grandparents’ requests for court-ordered visitation except to the extent that the common law has been modified by a statute that is constitutional.
The legislature modified the common law by means of the Act, creating in grandparents a limited right to visitation with their grandchildren. In order for a grandparent-visitation statute to pass constitutional muster, it must recognize the fundamental presumption in favor of the rights of the parents. The Act, however, and particularly § 30-3-4.1(d), makes no mention of the fundamental right of parents. Instead, it instructs the trial court to “determine if visitation by the grandparent is in the best interests of the child.” The “wishes of any parent who is living” are merely among the “[o]ther relevant factors” the court should “consider.” § 30-3-4.1(d)(6), Ala.Code 1975. As noted above, a parent’s right is fundamental, and a limitation on that right must be subject to strict scrutiny. To be constitutional, the Act must infringe upon the parent’s right only to the extent necessary to protect a compelling state interest and must do so in a narrowly tailored way, using the least restrictive means. This it fails to do. To the contrary, even the litigation resulting from a grandparent’s attempt to gain visitation under the Act burdens this fundamental right, regardless of the outcome, as the Illinois Supreme Court noted when considering a similar statute:
“The significant interference that section 607(b)(1) has on parents’ fundamental right is further evidenced by the procedure contemplated by the statute. The grandparents may file a petition for visitation under certain circumstances: in this case, where the parents are divorced. The parent or parents are then haled into court. The parents must pre *647 sumably hire attorneys, and then present evidence and defend their decision regarding the visitation before a trial court. The parents’ authority over their children is necessarily diminished by this procedure. This can only be characterized as a significant interference with parents’ fundamental right to make decisions regarding the upbringing of their children.”
Lulay v. Lulay, 198 Ill.2d 455, 474-75, 739 N.E.2d 521, 581-32, 250 Ill.Dec. 758, 769 (2000). This is no less true for requests for visitation brought under the Act. The Troxel Court reached a similar conclusion: “[T]he burden of litigating a domestic relations proceeding can itself be ‘so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child’s welfare becomes implicated.’ ” 530 U.S. at 75 (Justice O’Connor for the Court, quoting Justice Kennedy’s dissent, 530 U.S. at 101).
The rebanee in the Act on the best-interests-of-the-child standard does not protect the fundamental right of parents, even though it is that right that is at issue. Instead of recognizing the substantive and procedural rights of parents, fundamental in nature and protected by the Due Process Clause of the Fourteenth Amendment, the Act looks only to the interests of the child. Those interests are incredibly important, to be sure, but, absent more, they do not rise to the level of a compelling state interest. Furthermore, application of a best-interests standard substitutes the judge for the parent as the decision-maker, without regard for parental rights, again without a compelling interest. Because no .compelling interest is required by the Act and because there is no showing that application of the Act is the least restrictive means of achieving any state interest, the Act violates a parent’s fundamental right.
We do not deny the valuable role played by grandparents in the lives of many grandchildren. We share the sentiments expressed by the Supreme Court of West Virginia:
“It is biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child’s experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known.”
Petition of Nearhoof, 178 W.Va. 359, 364, 359 S.E.2d 587, 592 (1987) (quoting Mimkon v. Ford, 66 N.J. 426, 437, 332 A.2d 199, 204-05 (1975)).
There is no evidence in this case, however, indicating that the State has a compelling interest in forcing interaction between the grandparents and the grandchildren over the objections of the parents. And even if such a case were before us — i.e., a case showing such a compelling state interest — the Act applies in any case where the best interests of the child indicate that visitation with a grandparent might be appropriate, -without any regard for the parents’ fundamental rights. This failure of *648 the Act to include a presumption in favor of the parents when deciding questions of visitation infringes on the constitutional right of parents to direct the upbringing of their children, and the Act is therefore fatally flawed and unconstitutional.[2]
Nor can the Act be saved by simply striking subparagraph (d); that subparagraph alone provides a standard for a court to use in determining appropriate visitation, and, in its absence, the Act is no longer functional. Where an essential element of a statute is declared unconstitutional, the entire statute must be rejected:
“Under these well-established principles, the judiciary’s severability power extends only to those cases in which the invalid portions are ‘ “not so intertwined with the remaining portions that such remaining portions are rendered meaningless by the extirpation.” ’ Hamilton v. Autauga County, 289 Ala. 419, 426, 268 So.2d 80, 36 (1972) (quoting Allen v. Walker County, 281 Ala. 156, 162, 199 So.2d 854, 860 (1967)). If they are so intertwined, it must ‘“be assumed that the legislature would not have passed the enactment thus rendered meaningless.’” Id. In such a case, the entire act must fall.”
State ex rel. Jeffers v. Martin, 735 So.2d 1156, 1159 (Ala.1999). Because, in the absence of the operative portion — paragraph (d) — the Act cannot give sufficient guidance to the courts regarding visitation proceedings, we declare the entire Act unconstitutional and therefore unenforceable.
The grandparents argue that the decision of the Court of Civil Appeals does not consider the parameters established in Troxel, supra, in which the United States Supreme Court ruled a visitation statute of the state of Washington unconstitutionally overbroad. The grandparents correctly argue that the Court in Troxel did not apply a strict-scrutiny analysis or require the harm standard, but required only that “special weight” be given to the determination of a fit parent as to what is in the best interests of the child. The Court stated:
“[W]e do not consider the primary constitutional question passed on by the Washington Supreme Court — whether the Due Process Clause requires all non-parental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context.”
530 U.S. at 73-74. The Court also stated:
“In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent’s decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent’s own determination.”
Troxel, 530 U.S. at 70. It is precisely that “special weight” that is lacking in the Act.
The constitutional issue presented in this case is not about the holding of Troxel, however. It is about when a state may impinge upon the fundamental right of a' fit, natural parent to decide which associa *649 tions are in the best interests of his or her children. “[W]e have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Stanley v. Illinois, 405 U.S. 645, 651 (1972).” Troxel, 530 U.S. at 66 (emphasis added). Further, “ ‘there is a presumption that fit parents act in the best interests of their children.’ ” L.B.S., 826 So.2d at 191 n. 7 (Murdock, J., concurring in the judgment of reversal only) (quoting Troxel, 530 U.S. at 68).
The State must have a compelling interest to justify encroaching on the fundamental right of a parent to decide what is in the best interests of his or her child. The Act grants no deference to that fundamental right, however, and fails to limit the operation of the Act to those cases where there is a compelling state interest, instead requiring the court to decide visitation disputes between parents and grandparents based only on “the best interests of the child.”
The grandparents correctly note that this Court should interpret the Act to effect the intent of the legislature. The Court of Civil Appeals held that the Act could withstand this constitutional challenge if certain requirements are judicially imposed on its application. We disagree. This Court has previously discussed this issue of affording a statute constitutionality by judicial imposition of additional requirements:
“We are, of course, aware of the elementary principle that, where the validity of a statute is assailed, and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would uphold it. When the constitutionality of a statute is questioned, it is the duty of the courts to adopt a construction that will bring it in harmony with the Constitution, if its language will permit, even though the construction which is adopted does not appear to be as natural as the other. State ex rel. Collman v. Pitts, Probate Judge, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79 [ (1909) ]. There are, however, limitations to the application of these principles, and the courts are not at liberty in order to sustain a statute to give it a forced construction or to read into it and interpolate words which do not appear in the language enacted by the Legislature. 6 R.C.L. p. 79, § 77..
“There is also an obligatory duty of the courts, which are vested with the power to pass upon the constitutionality of statutes, to not overlook or disregard constitutional demands, which the judges are sworn to support, and therefore, when it is clear that a statute transgresses the authority vested in the Legislature by the Constitution, it is the duty of the courts to declare the act unconstitutional, and from this duty they cannot shirk without violating their oaths of office. 6 R.C.L. p. 72, § 69.”
McCall v. Automatic Voting Mach. Corp., 236 Ala. 10, 13, 180 So. 695, 697 (1938) (some emphasis added).
Section 43, Ala. Const.1901, states, in part, that “the judicial [department] shall never exercise the legislative and executive powers, or either of them.” This Court has also stated that “it is our job to say what the law is, not to say what it should be.... To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.” DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998). Although we recognize that “a court should refrain from invalidating more of the statute than is *650 necessary,” Regan v. Time, Inc., 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (plurality opinion), no part of the Act defers to the fundamental right of the parent or to the presumption in favor of a parent’s decisions regarding grandparent visitation.

Conclusion

In summary, the trial court awarded the grandparents visitation based on the best-interests-of-the-child standard in the Act. The Court of Civil Appeals held that, although the Act was not unconstitutional on its face, it was unconstitutional as applied to the parents because the grandparents were awarded visitation without a showing of harm to the children caused by denying the grandparents visitation. We, however, declare the Act unconstitutional in its entirety, because “the [A]ct clearly and unmistakably comes within the inhibition of the constitution.” Mobile Housing Bd. v. Cross, 285 Ala. 94, 97, 229 So.2d 485, 487 (1969). Because the rationale of this Court, albeit a different rationale than that relied on by the Court of Civil Appeals, supports the judgment of the Court of Civil Appeals, we affirm the judgment of the Court of Civil Appeals. Because of our resolution of this case, we pretermit any discussion of the other issues presented by the parties.
AFFIRMED.
WOODALL and WISE, JJ„* concur.
PARKER and MURDOCK, JJ„ concur specially.
STUART, BOLIN, and SHAW, JJ., concur in the result.
COBB, C.J., and MAIN, J.,* dissent.

. Although the Court of Civil Appeals upheld the Act, it reversed the trial court's decision awarding the grandparents visitation; that reversal is the subject of the grandparents' appeal.

. Furthermore, nothing in the Act requires a narrow tailoring of relief to the least restrictive means of addressing the State’s interest (e.g., modes and duration of visitation).