PARKER, Justice
(concurring specially).
In Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), the United States Supreme Court described the necessity of placing limits on the decision-making authority of minors, stating:
“[T]he [United States Supreme] Court has held that the States validly may limit the freedom of children to choose for themselves in the making of important, affirmative choices with potentially serious consequences. These rulings have been grounded in the recognition that, during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.”
443 U.S. at 635. Acknowledging that potential “lack of experience, perspective, and judgment” on the part of minors, the Alabama legislature enacted the Parental Consent Act, § 26-21-1 et seq., Ala.Code 1975; the first section of the Parental Consent Act, § 26-21-1, Ala.Code 1975, states in full:
“(a) It is the intent of the Legislature in enacting this parental consent provision to further the important and compelling state interests of: (1) protecting minors against their own immaturity, (2) fostering the family structure and preserving it as a viable social unit, and (3) protecting the rights of parents to rear children who are members of their household.
“(b) The Legislature finds as fact that: (1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, (2) the medical, emotional, and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, (3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, (4) parents ordinarily possess information essential to a physician’s exercise of his or her best medical judgment concerning the child, and (5) parents who are aware that their minor daughter has had an abortion may better insure that she receives adequate medical attention af *69 ter her abortion. The legislature further finds that parental consultation is usually desirable and in the best interests of the minor.”
Thus, the Parental Consent Act expresses the Alabama legislature’s strong interest in protecting and preserving parental rights.
The requirement of parental consent can be waived by court order in the case of “[a] minor who elects not to seek or does not or cannot ... obtain consent from either of her parents or legal guardian.” § 26-21-3(e), Ala.Code 1975. A waiver of parental consent is obtained through the judicial-bypass procedure set forth in § 26-21^4, Ala.Code 1975, which permits a pregnant minor to seek judicial authorization for an abortion, as did the minor in this case. That Code section states, in relevant part: “The required consent shall be waived if the court finds either: (1) That the minor is mature and well-informed enough to make the abortion decision on her own; or (2) That performance of the abortion would be in the best interest of the minor.” § 26-21-4(f), Ala.Code 1975.
In this case, the trial court, in a precise and thorough order setting forth the facts of the case and analyzing those facts in light of the applicable statutes and precedents, specifically determined that the petitioner, a 17-year-old unmarried, un-emancipated minor, lacked the maturity and knowledge necessary to determine for herself whether an abortion of her pregnancy was in her own best interest. The trial court also specifically determined that the evidence before it did not indicate that an abortion would be in the best interest of the petitioning minor. The trial court therefore declined to authorize an abortion.
By properly declining to waive parental consent and authorize the abortion requested by the minor in this case, the trial court left the authority to determine whether an abortion is in the minor’s best interest solely in the hands of the minor’s parents. Its doing so is in accord with our statutes and with precedents from the United States Supreme Court, which stated in Bellotti that “[tjhere is ... an important state interest in encouraging a family rather than a judicial resolution of a minor’s abortion decision.” 443 U.S. at 648.
In Bellotti the United States Supreme Court explained that “[tjhe State commonly protects its youth from adverse governmental action and from their own immaturity by requiring parental consent to or involvement in important decisions by minors.” 443 U.S. at 637. This parental involvement is not a new phenomenon: “Consent and involvement by parents in important decisions by minors long have been recognized as protective of their'immaturity.” 443 U.S. at 649. Nor is this parental authority mere convenience:
“[A]n additional and more important justification for state deference to parental control over children is that ‘ [tjhe child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.’ Pierce v. Society of Sisters, 268 U.S. 510, 535 (1925). ‘The duty to prepare the child for “additional obligations” ... must be read to include the inculcation of moral standards, religious beliefs, and elements of good citizenship.’ Wisconsin v. Yoder, 406 U.S. 205, 233 (1972). This affirmative process of teaching, guiding, and inspiring by precept and example is essential to the growth of young people into mature, socially responsible citizens.
*70 “We have believed in this country that this process, in large part, is beyond the competence of impersonal political institutions .... Thus, ‘[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.’ Prince v. Massachusetts, supra, 321 U.S. [158], at 166 [ (1944) ] (emphasis added).
“Unquestionably, there are many competing theories about the most effective way for parents to fulfill their central role in assisting their children on the way to responsible adulthood. While we do not pretend any special wisdom on this subject, we cannot ignore that central to many of these theories, and deeply rooted in our Nation’s history and tradition, is the belief that the parental role implies a substantial measure of authority over one’s children. Indeed, ‘constitutional interpretation has consistently recognized that the parents’ claim to authority in their own household to direct the rearing of their children is basic in the structure of our society.’ Ginsberg v. New York, supra, 390 U.S. [629], at 639 [ (1968) ].
“Properly understood, then, the tradition of parental authority is not inconsistent with our tradition of individual liberty; rather, the former is one of the basic presuppositions of the latter.”
443 U.S. at 637-38. This Court has also upheld the fundamental right of parents to direct the upbringing of their children. See Ex parte E.R.G., 73 So.3d 634, 642, 643 (Ala.2011) (“The right of parents to direct the upbringing of their children has long been recognized as fundamental by the United States Supreme Court.... This Court has also recognized the fundamental nature of parental rights.”). By denying the petition for review of the judgment of the Court of Civil Appeals in this case and thereby leaving the final decision-making authority to the minor’s parents, this Court again affirms its commitment to the fundamental right of parents to direct the care and upbringing of their children.
After reviewing the evidence and arguments before us, I concur in denying the petition seeking review of the judgment of the Court of Civil Appeals, which in turn affirmed the trial court’s decision in this case.